## George A. Montag, Appellant, *v.* James J. Linn, Appellee.

### APPEAL FROM ADAMS.

Where an instruction given, is substantially the same as one refused, the judgment will not be reversed for such refusal; especially where the latter instruction is expressed in such language as would throw a suspicion upon the testimony of one of the parties.

The court has discretion in reference to the time when testimony may be received; and a plaintiff in ejectment may offer a deposition after testimony has been closed, showing title, especially if it is rebutting testimony.

It is the province of the court to judge of the legal effect of a deed.

Where interlineations or alterations occur in a deed, it is presumed they were made after it was executed, and the party claiming under it must explain them.

An alteration of the numerical description of land is fatal to a deed, if unexplained, and should not be countenanced; and may not be explained by that portion of the deed which says it was granted to A. B. for military services, etc., without additional proof of identity.

This was an action of ejectment, brought by the appellee against the appellant, to the March term, 1856, of the Adams Circuit Court, for the recovery of the south-east 25, 2 south, 8 west, in Adams county, Illinois.

Declaration in the usual form, and plea of not guilty.

At the October term, 1859, of said court, a trial was had before Sibley, Judge, and a jury.

The jury found for plaintiff, and defendant entered a motion for new trial.

The motion was overruled, and judgment entered in favor of plaintiff for the recovery of said premises and for costs, and a writ of possession awarded. Defendant prayed an appeal and filed his bill of exceptions, which is substantially as follows:

Plaintiff offered on trial, to the jury, an exemplification of a patent from the United States to John Silver, a private in McIntosh's company of light artillery, dated February 26, 1818, for the premises in controversy. And also offered and read in evidence (defendant objecting) a deed of conveyance in fee simple, for the premises in controversy, dated January 11, 1855, purporting to be made by John Silver to Albert M. Noyes;

consideration, one hundred dollars; duly acknowledged, and which was recorded January 24, 1856, in the office of the clerk of the Circuit Court of Adams county, Ilinois.

Plaintiff then offered, and read in evidence, a deed for said premises from said Albert M. Noyes to plaintiff, dated February 1, 1856, duly acknowledged and recorded in Adams county aforesaid; and rested his case.

Defendant admitted that he was in possession of the premises in dispute when the suit was commenced.

Defendant, on his part, then read in evidence the original patent from the United States, reciting that "John Silver, having deposited in the general land office a warrant in his favor,' numbered 11,681, there is granted unto the said John Silver, late a private in McIntosh's company of light artillery, a certain tract of land, containing one hundred and sixty acres, being the south-east quarter of section twenty-five, of township two south, in range eight west, in the tract appropriated by the acts aforesaid for military bounties in the territory of Illinois. To have and to hold," etc. Dated 26th of February, 1818. Recorded in the general land office at Washington.

Defendant then read to the jury a deed from John Silver to Joseph B. Cofield, dated the 18th day of January, 1850, with the accompanying certificates, which deed describes the premises conveyed, and is as follows:

"All that certain tract of land situate, lying and being in the military bounty district in the State of Illinois, being the south-east quarter of section (25) twenty-five, of township (2) two south, in range (8) eight west, containing (160) one hundred and sixty acres of land. Being the same tract of land granted to John Silver by the government of the United States of America, for military services as a soldier in McIntosh's light artillery, in the army of the United States, during the late war with Great Britain."

Said deed was in the usual form of general warranty deeds, was for an expressed consideration of $150, was proved by one of the subscribing witnesses on the 18th of January, 1850, before Samuel Badger, a notary public for the commonwealth of Pennsylvania, residing in the city of Philadelphia, on the 18th of January, 1850, and was recorded in the office of the clerk of the Circuit Court of said Adams county, and also a certificate of conformity indorsed thereon, which was read in evidence with said deed, executed under seal of the Court of Common Pleas of the county of Philadelphia, by the clerk of said court, certifying that the execution and proof of said deed was in conformity with the laws of Pennsylvania.

Defendant next read in evidence, deeds in due form, purport-

ing to convey the title to said premises from said Joseph B. Cofield to defendant; and rested his case.

Plaintiff then read to the jury (defendant objecting) a deposition purporting to be from *John Silver*, who testifies, on the 17th of February, 1857, that he is about sixty-six years of age; that he was a soldier in the last war with Great Britain; that he enlisted in Boston, in 1814, and served until he was discharged, at Plattsburg, in summer of 1815; that he served under Captain, McIntosh, first company, first regiment of light artillery, as a private. Gave his discharge to the person he boarded with in New York, a countryman of witness, a Portugese. Afterwards went into United States naval service, and in 1818 was cast away off South-West Pass, and lost some papers, but had not his discharge with them; knows it was then in New York. Left the navy in 1830, and settled in Pottsville, Schuylkill county, Pennsylvania. Told Col. Straub, member of congress from that county in 1853, that witness had land coming to him for services in last war, and did not know what had become of it. Asked him to inquire about it, and received a communication from department at Washington, dated January 12, 1854, stating that the claim of John Silver, No. 175,296, for bounty land, under the *Act of September* 28, 1850, was received and would be attended to. Witness received another communication from the pension office, stating that the records of the office show that John Silver received a warrant for service under Captain McIntosh, in the war of 1812, for 160 acres of land, subsequently patented to him, and that consequently witness was not entitled to bounty land under *Act of September* 28, 1850; and afterwards got a duplicate for this land.

Conveyed land in controversy to Albert M. Noyes, on 11th January, 1855.

Never conveyed the land to Joseph B. Cofield, and never knew him. Never conveyed to any one except Noyes; if there is any deed purporting to be from witness to Cofield, it is a forgery.

An exception was taken by defendant to the reading of the aforesaid deposition, after plaintiff had closed his evidence and rested his case, it not being rebutting evidence.

The jury found for plaintiff.

Defendant moved for a new trial, because the court gave improper instructions for plaintiff, and refused proper instructions for defendant; the court, by some of its instructions, decided questions of fact, and left questions of law to the jury; the instructions given for plaintiff were not the law, and were calculated to mislead the jury.

The court, SIBLEY, Judge, overruled said motion, and rendered

final judgment on the verdict for the recovery of the premises, and for costs.

The errors assigned are:

1. The permitting deposition of John Silver to be read to jury after evidence was closed.

2. In giving instructions Nos. one, two and three for plaintiff.

3. In refusing to give instructions as asked for by defendant.

4. In not granting a new trial for reasons assigned.

WILLIAMS, GRIMSHAW & WILLIAMS, for Appellant.

A. WHEAT, for Appellee.

BREESE, J. The errors assigned on this record, question the correctness of the decision of the Circuit Court, in permitting the deposition of John Silver to be read to the jury after the evidence was closed, and in giving the following instructions to the jury on the part of the plaintiff:

" The court instruct the jury that the plaintiff, Linn, has proved title to the premises in question in fee simple, and is entitled to a verdict in his favor, unless they believe, from the evidence, that the deed from John Silver to Joseph B. Cofield, offered in evidence by the defendant, was the genuine act and deed of John Silver, the patentee of said premises.

" That material interlineations in a deed are presumed to be made after the execution of the same, and render the deed void, unless they are explained by the party taking the benefit thereof, and that in this case the jury will consider the deed purporting to be executed by John Silver to Cofield, and read in evidence by the defendant, as void and worthless, unless they believe, from the appearance of said deed, that the interlineations therein were made at the time of the execution thereof, or before that time.

" That if the jury believe, from the evidence, that the witness, Silver, was the patentee of the land in controversy, and that he is a truthful witness in his depositions taken and read in this case, then, in making up their verdict, they should consider the deed read in evidence by the defendant, purporting to be executed by John Silver to Cofield, as a forgery ; and the jury are to regard Silver as a truthful witness, unless his testimony has been impeached in some legal manner."

And in refusing to give the following instruction asked by the defendant:

" That the uncorroborated evidence of the witness, John Silver, is to be received by the jury with caution, as tending to prove his identity with the soldier to whom the land was

patented, or that he had not previously conveyed the land in controversy."

In regard to this instruction, we may remark here, that the record shows that the instruction given by the court, next preceding this, contains, substantially, the same proposition. It is in these words: "That in determining such questions of identity and prior conveyance, the jury have a right to take into consideration that the evidence of said witness is uncorroborated, and that he is the person who made the deed under which the plaintiff claims."

We think this is all the defendant could, with propriety, ask the court to say to the jury, and saying so much, put the jury upon their caution. Had the court told them, in so many words, they must be cautious, it would have thrown a suspicion about the testimony, and which, coming from the court, would be well calculated to prejudice the plaintiff's case. Calling the attention of the jury to the fact, that Silver's testimony was uncorroborated, was going as far as the court should have gone.

Upon the first error assigned, admitting the deposition of John Silver, offered by the plaintiff after the evidence was closed, we have to remark, that it was impossible for the plaintiff in the action to know certainly, when he made out his case, that the defendant would offer a prior deed, purporting to be from John Silver, under whom the plaintiff claimed, as evidence of his title. The plaintiff made out a *prima facie* case, by the exemplification of a patent, for the land in controversy, from the United States to one John Silver; a deed from Silver to one Noyes, and from Noyes to the plaintiff, and there rested, it being admitted that the defendant was in possession at the time of bringing the suit. How could the plaintiff know but that the defendant would defend under his possession? When he introduced a deed from John Silver to one Cofield, and claimed under it, prior in date to the deed to Noyes, it was necessary to get rid of that deed, and this the plaintiff attempted to do by showing, by Silver's deposition, that it was a forgery. It was, therefore, rebutting testimony, and properly admitted as such. But if it was not, we have often held that it is discretionary with the court to hear additional testimony after the testimony is closed, and before the jury have retired. It is no more than recalling a witness to testify to some omitted fact, which courts in their discretion rarely refuse, and we have also said that the Circuit Court may, in its discretion, hear new testimony after the commencement of the argument. *Bloom* v. *Goodner*, Breese, 35.

As to the instructions given for the plaintiff, we think they were all proper. The first may be objectionable in its frame, but

it is not in its substance. It should, perhaps, have stated the proposition somewhat in this form: If the jury believe, from the evidence, that the deed purporting to have been executed by John Silver to Cofield, was not the genuine act and deed of John Silver, then the defendant has shown no title under it, and the plaintiff having shown title in fee simple, the verdict must be for him. The genuineness of the deeds from John Silver to Noyes, and from Noyes to the plaintiff, not having been impeached in any way, made out a title in fee simple in the plaintiff, and the court should so tell the jury, as it is the province of the court to judge of the legal effect of deeds. In substance, the instruction complained of is of this purport and meaning.

The second instruction, going to the palpable alteration of the deed from Silver to Cofield, states a correct legal principle as to the presumption arising, where interlineations or alterations appear in a deed, which, if not satisfactorily explained, will avoid the deed. The law presumes the alteration was made after the deed was executed, and it is for the party claiming under it to show it was not, or otherwise explain it. *Walters* v. *Short*, 5 Gilman, 252; *Hodge* v. *Gilman et al.*, 20 Ill. R. 441. It was taken for granted that the alterations in this deed were material, and no opinion of the court asked thereon, but it is now insisted that they are not material, and are not of such a character as to avoid the deed; and this is the chief point in the whole controversy.

Numerous authorities are cited and relied on by the appellant, to show that an alteration in a deed, made by a grantee without authority, by which section 24 is made to read section 25, is not a material alteration, if there be other descriptive words in the deed, unaltered, sufficient to identify the land conveyed.

The deed from Silver to Cofield described the land as "being the south-east quarter of Section (25) twenty-five of Township (2) two south, in Range (8) eight west, containing (160) one hundred and sixty acres of land, being the same tract of land granted to John Silver by the government of the United States of America, for military services as a soldier in McIntosh's light artillery, in the army of the United States, during the late war with Great Britain." The original deed has been, by the parties, submitted to our inspection, and we are well satisfied the figures 25 are written above an erasure of figures denoting 24, and the word "five," is made so by changing another word, resembling four, into five. It is a palpable case of alteration, and in no wise accounted for, and ought, of itself, to exclude it as evidence, for the sake of the dangerous example it would set, and the frauds and forgeries it would encourage, if

admitted unexplained. But to the argument and the cases cited.

The argument is, that there being a perfect and unaltered description of the land, following the altered numerical description, makes the alteration immaterial. This seems to be a *petitio principii* — a begging the question, for it is not admitted that the words following the numerical description of the land are, or were designed to be a description of the land granted. The land granted was described by certain numbers, and that land, thus described, was the land, and the only land, granted by the government of the United States to John Silver. In the patent from the government to Silver, the land is described by numbers, and if it was shown there was but one John Silver in the army, in McIntosh's light artillery, the general description might be sufficient. In the deed, the grantor conveyed to Cofield a tract of land by its numbers, describing it as the same land granted to John Silver, etc. Striking out the description of the land by its numbers, then, the *onus* is on the party claiming under the deed, to show affirmatively there was but one John Silver to whom land was granted by the government for military services, and then identify that as the land in controversy.

It was necessary, in the patent, to describe the land granted by its numbers, and that is the only description the government has adopted. In a conveyance by the patentee, he would naturally describe the land in the same way, and we know such is the universal practice. No prudent person would accept a deed from him without such description — a general description, "being the same land granted," etc., would not be sufficient. But if there was a mis-description by numbers in the deed, it might be corrected by reference to the general description as "being the same land granted," etc. The court might reject the imperfect or improper description as surplusage, as in *Smith* v. *Marsh*, 6 Cowen, 281; and in *Loomis* v. *McNaughton*, 19 Johns. 449. But that is not the question here. The question here is, can the grantee alter and erase the numerical description of a tract of land conveyed by deed, when he discovers it to be wrong, and then produce the deed in court, and rely upon the general description, referring to the land as land theretofore conveyed to his grantor.

The cases cited by the appellant's counsel do not seem to sustain this position. *Worthington* v. *Hilyer*, 4 Mass. 196, was a case where the court was compelled to adopt several circumstances entirely repugnant to the deed, in order to uphold the title of the demandants. They rejected, as surplusage, a certain general description of the land conveyed, and gave effect to the particular description.

The case of *Abbot* v. *Pike*, 33 Maine, 204, is a case of similar character, and the court say, particular recitals, when used merely as descriptive of the grant, do not limit or restrict it, where the general language of the conveyance is intelligible and effective, without the recitals. So a true and certain description of the grant is never invalidated by the addition of a falsity, when the intention of the parties can be subserved, and the conveyance upheld, by sustaining the true and rejecting the false description.

The case of *Lyman* v. *Loomis*, 5 N. Hampshire, 408, was a case of covenant broken. The allegation was, that the defendant, by deed, etc., conveyed to the plaintiff the following lots of land lying and being in Bethlehem, to wit, lot No. 33, in the 11th range, and lot No. 37, in the 14th range, containing one hundred acres each, being the same land deeded to James Chamberlain, Junior, by Stephen Lane, February, 1801, and covenanted that he was the possessor of the said lots. At the time the deed was made, it was shown the defendant was not the possessor of any such lots in Bethlehem as those described in his deed ; but he had lawful authority to convey lot No. 33, in the 11th range, and lot No. 27, in the 14th range, in a gore of land adjoining Bethlehem, and that the lots in this gore were conveyed by Stephen Lane to James Chamberlain, by a deed dated 20th Feb., 1801, and there is a reference to this deed for a more particular description of the lots. The court held, that the rule was, if the description be sufficient to ascertain the land intended to be conveyed, the land will pass, although it does not agree with some of the particulars in the description, as in 4th Mass., and 6th Cowen, above cited. The court rejects, as false or mistaken, the description of the lots as in Bethlehem.

The old English case of *Blaque* v. *Gold*, 4 Croke's Charles, 447, is not variant from those commented on. It was trespass, and a special verdict found that Peter Blaque was seized in fee of two houses in Andover, the one called the corner house, in the tenure of one Binson and Nott, and of another house thereto near adjoining, in the tenure of Hitchcock. He devised his house called the corner house, in Andover, in the tenure of Binson and Hitchcock, to J. S., in fee. Whether the house in the tenure of Hitchcock, adjoining to the corner house, shall pass or no, was the question, and resolved, that it shall not. But only the corner house, in the occupation of Binson and Nott, (if they occupy jointly,) shall pass ; but if they occupy severally, viz.: one part in the tenure of Binson, and the other part in the tenure of Nott, severally, then only that in the tenure of Binson shall pass, and not the residue in the tenure of Nott; wherefore, rule was given, unless other cause were shown to the con-

trary, that judgment should be for the plaintiff. At a subsequent day it was shown (p. 473) that this devise was upon a condition, " that the same be new built according to the covenants betwixt me and Bernard Calvent; and it was found that this house was the house in question, and was at the time of the will making, in the tenure of Hitchcock, and that the corner house was in the tenure of Wilson and Nott, and that the covenants with Bernard Calvent were for the re-edifying of the said corner house." The judges delivered their opinions, *seriatim*, that the corner house only passed by the will, and not the house adjoining, in the tenure of Hitchcock; for although the corner house was not in the tenure of Hitchcock, but a misprision, yet the devise is good, for it is sufficiently ascertained before, viz. : the corner house in Andover, and the addition *in tenura* Hitchcock, although it be not in his tenure, and is a mistake, yet it is but surplusage, and although false, shall not vitiate the devise.

All these cases proceed upon one and the same general principle, that, in order to sustain a grant, courts will, under proper circumstances, reject, as surplusage, parts of a description with which the grant cannot stand.

None of the cases cited reach this case. The deed to Cofield was, when executed, a deed for a particular quarter section of land. This was the description, and the only description of the land. The reference as " being the same land granted," etc., is no part of the description, or at least but a subordinate part. But the question recurs, what right had the grantee or the court to strike out and alter one part of the description, rather than another, unless the part retained completely fitted the subject claimed, and the rejected part did not; and unless, further, it appears that the whole description, including the part sought to be rejected, is applicable to no other thing ? It may be that one part of the description will suit several distinct things, while the whole will embrace only a single thing. That single thing is the subject of the conveyance, if it can be found ; and no other can be deemed the subject, until it be shown, at least to the degree of moral probability, that there is no *corpus* that will answer the description in every particular. *Mayo* v. *Blount*, 1 Iredell, 285 ; 4 Cruise's Dig. 265 (side-paging), note 1, by Greenleaf.

It may be there was another John Silver in the army of the United States, entitled to military bounty land. It was incumbent on the appellant to rebut such a probability by some evidence, for such a probability might well arise, as applicable to this case by the language of the deed, if the numerical description be stricken out. Suppose the deed had been offered unaltered as

for the south-east 24, could the court, on the trial, reject the numbers as surplusage, and permit a recovery on the reference clause, without proof of there being no other John Silver? and by what authority would the court strike out of the deed any part of the description, which was not made to appear false? Retaining the original description in the deed, as we are bound to do, it plainly appears it was for a different tract of land than the one in controversy. And the appellant had no right, or the parties under whom he claims, so to alter it as to meet his case. Such an act should not be tolerated for a moment, for if grown into practice by the tolerance of the court, no one can foresee the frauds and villainies which may result from it.

The intention of the parties to a deed, is always an important element to be considered in putting a construction upon it, and in giving it effect. The parties to this deed, as originally made, intended, the one to grant, and the other to take a certain tract of land, described by its numbers as the south-east quarter of section 24. An alteration of that deed to south-east 25, is contrary to the intent of the parties, and is, therefore, a material alteration.

We think the circuit judge could not well have put the fact of this deed being forged, too strongly to the jury. We see no error in what he did say to them, and, therefore, affirm the judgment.

We may remark, as to the merits of Silver's deposition and want of corroboration complained of, that it appears to have been taken in 1857, and the trial had at October term, 1859. Between these periods, at any term of the court, the deposition being returned, the court would have permitted the seal to be broken, and the deposition inspected, so that ample opportunity was afforded appellant to falsify it, by other depositions of witnesses indicated by Silver himself, or the appellant might have been present when the deposition was being taken, and, at the locality of the deponent, found materials for successful attack, if any existed. The deposition bears, on its face and in its narrative, the impress of truth, yet it might be falsified. It has not been, nor has the deponent been impeached in any manner, and though uncorroborated, he was a fair subject for the judgment of the jury, under the circumstances.

*Judgment affirmed.*