### NELSON v. WADE et al.

1. **Conveyance: PRIORITIES: MISTAKE IN DEED.** The purchaser of real estate at a judicial sale takes priority over a senior purchaser who holds the property under a deed in which it is so imperfectly described that the record thereof does not impart constructive notice; unless at the time of his purchase he had actual notice or such notice as would put a reasonably prudent man upon his inquiry.

2. —— **EVIDENCE.** The sufficiency of evidence to establish such notice considered and determined.

*Appeal from Henry District Court.*

MONDAY, JUNE 25.

*Palmer* for the appellant.

*Woolson* for the appellee.

LOWE, Ch. J. — This controversy has relation to the ownership of lot one, in block six, of Landner's 2d addition to the town of Mt. Pleasant.

Both parties claim to derive title from one William Wolf. The origin and manner of the plaintiff's title are (as we gather it from the record) as follows:

On the 7th day of January, 1858, one Theodore Shriner attached said lot as the property of Wolf, to secure a debt upon which subsequently, in August, 1858, he obtained a judgment, and assigned the same to one Buchanan, who

sued out execution thereon, and sold the property at sheriff's sale, on the 11th day of December following, and became himself the purchaser thereof; and about the time for the expiration of the redemption, he resold his right and interest in said judgment, execution, sale and sheriff's certificate of purchase to plaintiff, to whom the sheriff made a deed on the 12th day of December, 1859.

The defendant, Peter S. Wade, derived his title from Enos Barrett, by deed dated March 26, 1858, duly recorded on the next day thereafter. Barrett obtained title from Wolf, by deed dated December 31, 1857, recorded the 9th day of January, 1858. The deed, as recorded, described the property as lot six (by mistake as alleged), instead of lot one in block six.

In this condition of the title as respectively held by the parties, Wade, on the 7th of April, 1860, instituted his proceedings of forcible entry and detainer against Nelson and his tenant, John Hagen, for the possession of the premises, charging that he was wrongfully ousted from the same by force and fraud on the part of Nelson. Nelson denied this charge, and set up title to the premises in himself as evidence of his right of possession, and asked on this account that the case then pending before the justice of the peace be transferred to the District Court. This was not only refused, but a demurrer to the plea of title was sustained. Thereupon Nelson commenced this his suit in equity, to enjoin the judgment of ouster in the forcible entry and detainer action until the title to the property could be determined by a court of competent jurisdiction, and quieted in him.

Wade's answer and cross-bill to Nelson's petition for an injunction, denies his ownership of the lot, and all other allegations, except the bringing of his suit of forcible entry and detainer; asserts his own title and actual possession thereunder, and that he was wrongfully dispossessed by

plaintiff; that his title was derived from one Enos Barrett, who acquired title of William Wolf in December, 1857, prior to the date of the attachment lien under which the plaintiff claims, and that the said Barrett went immediately into possession of said lot at the date of his purchase, and continued to occupy the same until he sold to the defendant, Wade, in March thereafter, when the defendant in this case came into possession. It is alleged, however, that the conveyancer drawing the deed from Wolf to Barrett, by accident or mistake, described the lot in dispute (and which as a matter of fact was sold by Wolf to Barrett) by omitting a part of the words "Lot one in block six," and inserting as descriptive of the property only the words "lot and six." He asks that this error of description in said deed be corrected according to the facts and the intention of the parties; that his title shall be declared to have precedence over the plaintiff's; that he have compensation for the use of the property by plaintiff, and that he be put in possession, &c.

The plaintiff, in his reply, sets out his title under the attachment; declares that the defendant Wade never had any open actual possession of said lot; that his claim and pretended title thereto were fraudulent; that he, plaintiff, never had any notice whatever of any adverse title or claim at or before his purchase of said lot at sheriff's sale, and that he is a *bona fide* purchaser thereof.

Now as there is no defect or irregularity in the chain of title of either party shown or insisted upon (except a mis-description of the property in one of defendant's deeds hereafter to be noticed), it becomes simply a question of priority which of the parties has the better title. The exhibits attached to the pleadings show that defendant's title by deed of conveyance from Wolf antedates that of the attachment lien against the same party under which the plaintiff derives title.

1. CONVEY-ANCE: priorities: mistake in deed.

But, while the evidence shows that lot one in block six referred to, was in fact sold by Wolf to Barrett on the 31st day of December, 1857, and was intended to be conveyed to him, nevertheless, the deed therefor, executed at that date, described the lot so imperfectly that it would not, when recorded, impart constructive notice to a subsequent purchaser. It follows, therefore, that the plaintiff's is the paramount title unless Buchanan, at the time of his purchase at sheriff's sale, had actual notice of Wade's equities, or that which is equivalent thereto; such notice as would put a reasonably prudent man upon inquiry. Upon this question alone the whole controversy turns.

We inquire, then, how does the evidence dispose of this question?

2. evidence.

1st. Although the deed from Wolf to Barrett does not describe the lot in dispute, so that it could be ascertained from the description, yet Barrett's testimony shows that it was the only lot in that addition to the town of Mount Pleasant, that Wolf owned, and he further proves that it is the identical lot he purchased of Wolf, and which was intended to be described and conveyed to him. He further testifies, that at the date of his purchase, Wolf gave him the key of the house, and that he took possession thereof, and held the same till the 26th of March following, when he sold and conveyed the premises, by a proper description, to Peter S. Wade; that Wade received the key of the house from him and took immediate possession, which he held up to the time he (Barrett) left the neighborhood, which was nearly a year. This would take Wade's possession beyond the period of Buchanan's purchase at sheriff's sale, viz., December 11th, 1858.

2d. On the 26th day of March, 1858, Wade purchased the premises of Barrett, and he testifies that he took actual possession thereof at once; that he expended some $40 in repairing and painting the house; that he set out shrubbery

on the lot, and put a tenant in possession under him, whose name he did not remember, and left the property in charge of McFarland and Woolson, his general agents.

The evidence further shows that Wade at the time knew of the defective description of the property in the deed from Wolf to Barrett, but was told that the court would correct it; that in view of this defect, the witness Palmer (then the partner of McFarland, and now the attorney of plaintiff), suggested the setting out of the shrubbery mentioned, and the exercise of other acts of ownership and possession, in order to guard against the consequences of a resale of the lot by a correct description on the part of Wolf, who had then left that neighborhood, and for the same reason, we presume, it was that Wade further testified that he was particular in taking possession of the property at the time he purchased the same. This shows that Wade put a tenant in possession of the premises in the spring of 1858, and that he was fully aware of the importance of holding open possession of the property. How was this tenant or some other tenant of his in possession in December following, when Buchanan bought the property at sheriff's sale? This is proved in two ways: First. Barrett testifies Wade held possession from the time he surrendered it, in the spring, to him, till he left, which was nearly a year. Secondly. Nelson purchased of Buchanan about the 12th day of December, 1859. Palmer, his agent and attorney, immediately thereafter visited the premises, and found a Mrs. Foster in possession; asked her, among other things, to whom she paid rent; the reply was, to no one. She was informed that he, as the agent of the owner, would receive the rent, and he thought she ought to pay back-rent, or from the date of their ownership, which we take to be the sheriff's sale, to which she made no objection, and proposed to give him an order on a Mr. Ferguson. This is evidence strongly tending to prove her possession at the

time that Buchanan purchased. Again, when Nelson purchased of Buchanan, he inquired if any one was in possession; he was told that there had been, but he did not know how it was then. This further shows Buchanan's general knowledge of an adverse possession by some one. Nelson, although apprised of the fact before, did not go to see about the possession till after he purchased. When he did so Mrs. Foster could not recollect the name of the owner; that she did not pay the rent herself to any one, but that some man paid the rent for her. It would seem if Nelson had made this inquiry before he purchased, and had followed it up, he could have discovered who the adverse owner of this property was, besides he took this property charged with all the infirmity arising from the knowledge of possession by his vendor, and we cannot think but that the evidence taken, as a whole, shows the open adverse possession of Wade by his tenant at the time of the purchase of both Buchanan and Nelson. If so, the latter is not entitled to the relief he asks. Possession by a tenant is sufficient to put a subsequent purchaser upon inquiry as to the rights and equities of the landlord. See *Dickey* v. *Lyon et al.*, 19 Iowa, 544.

Affirmed.