ALBION K. JONES *vs.* JAMES McNARRIN.

Penobscot.    Decided June 19, 1878.

*Execution.    Deed.    Lis pendens.*

A reco d in the registry of deeds of a levy, designed to take a part of lot 32, but describing a part of lot 29 upon the same plan and survey, the description by metes and bounds perfectly fitting the one parcel as well as the other, excepting in the statement of the number of the lot, is not alone sufficient notice to a subsequent purchaser from the execution debtor, that a part of 32 instead of a part of 29 was in fact taken by the levy.

Nor does the pendency of a real action in the name of the creditor against the debtor to recover the premises levied upon, the declaration containing the same erroneous description and none other, operate as a notice to a subsequent purchaser, that 32 instead of 29 was levied upon.

*Lis pendens,* affects a purchaser with constructive notice of all the facts that are apparent on the face of the pleadings at the time he takes his deed, and of such other facts as those facts necessarily put him upon inquiry for, and as such inquiry, pursued with ordinary diligence and prudence, would bring to his knowledge.

ON REPORT.

WRIT OF ENTRY, for a certain piece of land with the buildings thereon, situate in Oldtown, in the county of Penobscot, and bounded as follows, to wit: " Beginning at the southeast corner of the lot of land occupied by Moses Buck, in June, 1862, and erroneously called lot No. 29 in a levy of this plaintiff against said Moses Buck, made June 9, 1862; thence northerly along the west side of the Bennock road, to a point opposite the centre of

the front door of the house on said lot, through the middle of the front entry of said house, to the east line or side of the stable ; thence southerly at right angles, by the east side of said stable, to the south line of said lot ; thence east to the first mentioned bound."

The plaintiff having an execution against one Moses Buck, levied June 9, 1862, on the real estate in suit, and afterwards recovered judgment against him for the land described as follows : " Commencing at the southeast corner of lot No. 29, according to Treat's plan of Upper Stillwater in Oldtown ; thence northerly along the west side of the Bonnock road to a point opposite the center of the front door of the house on said lot ; thence," &c., the rest of the description being the same as in the declaration.

Pending the action of *Jones* v. *Buck*, Buck gave a deed of warranty, for a valuable consideration, of the land in question, which came by intermediate conveyances to the defendant. The land actually levied on was erroneously described in the levy as lot No. 29, and the action for its recovery, as shown in case of *Jones* v. *Buck*, 54 Maine, 301, which makes part of this case, was maintained, on the ground that, although the starting point was " the S. E. corner of lot number 29," none of the other calls applied to that lot, but all except the first did apply to lot 32. Addi tional evidence in this case tended to show another state of facts, and that all the calls in the levy were applicable as well to lot 29 as to lot 32.

*J. Baker*, for the plaintiff, relied upon *Jones* v. *Buck*, 54 Maine, 301.

*W. H. McCrillis*, for the defendant, contended that, although *Jones* v. *Buck* stated the law correctly on the facts assumed, the decision did not bind McNarrin, because the facts in that case were not correctly stated, the description in the levy as recorded in the registry of deeds applying to 29 as well as to 32, and the declaration in that case, following in terms the erroneous description of the levy, did not remove the ambiguity ; that while both the registry and the *lis pendens* gave his client constructive notice as to lot 29, neither of them gave him such notice as to lot 32.

PETERS, J.   No denial is made, that on July 23, 1864, Moses Buck, by deed of warranty and for a full consideration, conveyed lot 70 in Upper Stillwater to a person, under whom the defendant now holds possession of the same.   Lot 70, by Howard's plan, includes what was 32 by Treat's plan of the same premises.

The demandant claims to be entitled to lot 32, by virtue of a levy made by him against Moses Buck, on June 9, 1862, prior in time to the defendant's title.   The levy describes the land taken, " as the estate in fee simple, in severalty, and in possession of Moses Buck, the metes and bounds whereof are as follows : Commencing at the southeast corner of lot No. 29, according to Treat's plan, at Upper Stillwater in Oldtown ; " and the balance of the description consists in a specification of full metes and bounds.

It appears clearly, by the evidence now reported, that this description would identify a part of lot 32 on Treat's plan as well as it does a part of lot 29 on that plan, provided the number 32 should be inserted in the description instead of the number 29. With the exception of the starting point, the language delineating the boundaries of either lot may very correctly be identically the same.   Both lots (29 and 32) at the date of the levy were owned in fee simple, in severalty, and · in possession by the execution debtor, Buck.   The defendant does not admit the coincidence of description to be as perfect as we state it, but as the descriptions, excepting the number of lot, are, at least, substantially alike, for the purpose of this discussion we will regard them, with the exceptions stated, as if they did exactly correspond.

It is, however, suggested that the testimony of Buck, which establishes the identity of the two descriptions, may be disregarded as conflicting with statements made by him at a former trial. There is no absolute contradiction.   At the former trial he testified in these words : " The description in the levy describes the house on 32 except the number of the lot."   He says the same now.   He did not say at the former trial that the same language was not descriptive of 29 as well as applicable to 32.   David Norton at the former trial testified that the declaration in the writ covered the description of lot 29, and Buck nowhere denied it. Buck's point evidently was, that the levy was designed to be upon

32, and was void for misdescription. But if it were otherwise, Buck's present testimony cannot be contradicted in this way, the report of the former trial coming in, as it did, under positive objection. *Frye* v. *Gragg*, 35 Maine, 29.

The demandant claims that, as matter of fact, the appraisal was made of a part of lot 32 and not of a part of 29, and the levy was intended to embrace a part of the former and not of the latter lot. The first question is, whether, from the facts properly in proof, a subsequent purchaser can be charged with notice that 32 was levied upon, by the recitals in the extent recorded in the registry of deeds. We think not. The registry is silent as to 32. It expressly informs the world that only 29 was taken. By none of the tests of interpretation could it be otherwise. In *Birdsall* v. *Russell*, 29 N. Y. 220, 250, the doctrine is enunciated in these words : " The rights of a purchaser are not to be affected by constructive notice, unless it clearly appear that the inquiry suggested by the facts disclosed at the time of the purchase would, if fairly pursued, result in the discovery of the defect existing but hidden at the time. There must appear to be, in the nature of the case, such a connection between the facts discovered and the further facts to be discovered, that the former may be said to furnish a clue—a reasonable and natural clue—to the latter." Apply the severe rule laid down by Lord Hardwicke, in *Smith* v. *Low* (1 Atk. 489), and followed ever since, as the rule of constructive notice in equity, that what is sufficient to put the party on inquiry is good notice. What in this case could lead a purchaser to inquire beyond the facts so clearly declared in the record? He desires to see if 32 is clear of incumbrance. In his examination he finds that 29 has been levied upon. He ascertains that Buck owned 29 as well as 32. He finds no incumbrancer in the actual possession of 32. The record informs him that the land taken has certain definite boundaries. He finds them exactly fitted to lot 29, and demonstrating it perfectly. He finds every call exactly answered. He finds 29 included and 32 excluded by the description. Nothing in the registry warns him that he is at any risk or peril in taking the deed. If there had been any uncertainty in the description, he should have made further inquiry; but he finds a certainty of

description. If the description had been a general one, he should have investigated until he ascertained to what it applied. But he finds it in all respects particular. The position of the demandant is, that the number 29 may be rejected as false demonstration. It cannot be. It is not a false nor impossible nor inconsistent call. If it had been, the purchaser should have translated the difficulty somehow. But it wasneither, and so far from it that it comported exactly with the rest of the description. It was in truth the vital and indispensable point of the description. The rule that one call may be rejected never applies where the description includes several particulars, all of which are necessary to ascertain the estate to be conveyed. *Herrick* v. *Hopkins*, 23 Maine, 217. This is a doctrine that prevails through all the cases. Nor can parol proof be admitted to show what property was designed to have been levied upon by the creditor. *Young* v. *McGown*, 59 Maine, 349, for excellent reasons denies such a power.

The authorities are uniform upon this branch of the case, illustrating it under various different phases of fact. A recorded deed of "forty-five feet in the rear of lot one in block twenty," is not sufficient to lead a subsequent purchaser to inquire, and thereupon learn, that the land is not " in block twenty," but in block sixteen. *Rogers* v. *Kavanaugh*, 24 Ill. 583. The record of a deed of land described as "lot and six," does not impart constructive notice to a subsequent purchaser, that lot one in block six was intended by the description. *Nelson* v. *Wade*, 21 Iowa, 49. Where a deed of the " east " half of a lot is recorded as a deed of the " west " half, a subsequent purchaser of the east half, without actual notice of the fact, will be protected. *Sanger* v. *Craigue*, 10 Vt. 555. A mistake in the number of a section is not cured by a reference to the land as that patented to A B, for service in M's company in the late war, without proof that there was but one person answering to that description, so as to render an alteration of the number immaterial. *Montag* v. *Linn*, 23 Ill. 551. In the case of *Loomis* v. *Jackson*, 19 Johns. 449 (S. C. 18 Johns. 81), the court allowed the number 51 to be rejected from a description, where the grantor owned lot 50 but not lot 51, and where the bounds were minutely described and applicable to the lot 50 and

not to the other lot. The court there say, "the second purchaser could not possibly have been misled had he consulted the registry." *Worthington v. Hylyer*, 4 Mass. 196. *Madden* v. *Tucker*, 46 Maine, 367, and *Peck* v. *Mallams*, 6 Seld. 509, are also pertinent cases hereto. And see *Whitman* v. *Weston*, 30 Maine, 285.

The point already discussed is presented in another form. At the time the defendant's predecessor in title received his conveyance from Buck, there was pending a real action by the demandant against Buck for the premises levied on, and it is contended that this defendant is bound by the result of that suit, by force of the doctrine of notice by the *lis pendens*. The rule of *lis pendens* is undoubtedly one of the well settled doctrines of this court, both at law and in equity. The defendant in this suit is bound by such notice as the record of that case could impart to his predecessor at the date of the conveyance from Buck. Precisely the same rule applies as to this kind of notice as to notice by a recording in the registry of deeds. The effect of *lis pendens* and the effect of registry are in their nature the same thing. They are only different examples or instances of the operation of the rule of constructive notice. They are record notices. One is a record in one place and the other a record in another place. A purchaser must consult both places of record for light and information. And he is only bound by such information as such record discloses to him at the time he takes his deed. If the description of the land intended to be conveyed by a deed or designed to be demanded in a writ, is insufficient to inform a purchaser, or put him upon inquiry that will inform him, as to what the premises deeded or demanded may be, the purchaser will not be bound by either form of notice. Therefore the argument and the authorities adduced in support of the point previously discussed in this opinion, will have equal force and application here.

What, then, did the pending suit disclose to the purchaser? Precisely what the registry of deeds did and no more. The description in the levy and that in the writ exactly correspond. There is nothing to indicate the slightest difference. It was "29" that was levied upon, and "29" that was demanded. If the defendant was not estopped to claim the locus by the one record, he cannot be by the other.

But it is said, that the opinion of the court in the case alluded to, *Jones* v. *Buck*, 54 Maine, 301, states that the word 29 might be rejected as unessential and inconsistent, and that the execution was correctly enough levied on 32. There are abundant answers to this position from the standpoint occupied by this defendant. 1st. The opinion was based, as it turns out, upon a misapprehension of the real facts, if the proof in the present case is true. The statement in that case is, that the rejection might be made upon the supposition that none of the other calls apply to lot 29. It now, however, appears that, instead of none of the calls applying to 29, they all do perfectly. 2nd. What was said by the court in that respect related only to the argument or grounds of the opinion, and was in no sense a part of the strict record of the case. The decision was merely that the action was maintainable. The writ declared for 29. The demandant recovered 29, and had *habere facias* for the same. And the opinion of the court was, that it would be a good description of 32, provided that a certain assumption of facts was true. But a writ of *habere facias* that described the premises in the exact words of the levy could give no more right of possession than the levy gave. Finally: a conclusive answer to this position is, that the opinion was not a decision of record at the time that the title, under which the defendant claims, accrued. It was not a decision affecting him or those claiming before him under Buck. The action of *Jones* v. *Buck* was entered in court in January, 1864. Buck conveyed in July, 1864. The action came to trial at the October term, 1865. Judgment was rendered in November, 1867, and the opinion of the court not published till 1868. How could Buck's grantee in 1865, anticipate the occurrences that took place afterwards, or be bound by them?

The position which is taken by us upon these facts is well sustained by numerous authorities, from some of which we quote. For a *lis pendens* to affect a purchaser, there must be something in the pleadings, at the date of the purchase, to point his attention to the property purchased, as the identical property in litigation. *Lewis* v. *Mew*, 1 Strobh. Eq. 180. A purchaser will not be affected with notice by a bill charging the vendor with a

general misapplication of the property of the complainant, without specifying what the property was. *Price* v. *White*, 1 Bailey Eq. 244. Notice to a purchaser, arising from a bill filed, should not be extended beyond the property which is plainly the subject of the suit. *Griffith* v. *Griffith*, 1 Hoff. Cas. 160. The same rule was distinctly admitted by Chancellor Kent in *Green* v. *Slayter*, 4 Johns. Cas. 38. He held that an averment in a bill that " divers lands in Cosby's manor " were held in trust for the complainant, was sufficient to affect a purchaser from the trustee with notice, for the reason that, as there were no detailed and particular descriptions, the purchaser had a warning of a general character to see and ascertain what the parcels were. And of this case it was said in *Griffith* v. *Griffith*, *supra*, that in the opinion Chancellor Kent was obviously pressed by the argument of insufficiency of description. In *Miller* v. *Sherry*, 2 Wall. 237, it was held that a creditor's bill, to be a *lis pendens*, and to operate as a notice against real estate, must be so definite in the description of the estate, as that any one reading it can learn thereby what property is the subject of the litigation. The American editors of Leading Cases in Equity (part 1 of vol. 2, p. 12) state the rule in this way : " A purchaser will also be affected with constructive notice, whenever his purchase is made during the prosecution of a suit brought to enforce an adverse claim or title, which is set forth with sufficient certainty and distinctness to apprise him of its bearing on the property purchased. The constructive notice arising from the pendency of a suit, is subject to those limitations which apply to the doctrine of notice generally. It must be sufficiently certain to give the means of distinct and intelligible information of the matter to which it relates." The American editor of Hill's Treatise on Trustees, 511, in note, enunciates the rule thus : " The bill must refer with sufficient certainty to the lands in question, at least, to put the purchaser on inquiry." . Freeman on Judgments, § 197, regards the rule of *lis pendens* invoked, " if the land in all probability comes within the description, and if prospective purchasers, upon reading the bill, are advised by it that the land with which they propose to meddle may be, and probably is, a parcel of the lands in litigation." Justice Story, in

*Dexter* v. *Harris*, 2 Mas. C. C. R. 531, probably states the rule of constructive notice as acceptably as it can be compassed in any general terms. "The doctrine upon this subject as to purchasers," he says, "is this, that they are affected with constructive notice of all that is apparent on the face of the title deeds under which they claim, and of such other facts as those already known necessarily put them upon inquiry for, and as such inquiry, pursued with ordinary diligence and prudence, would bring to their knowledge."

It was urged, at the argument, that this conclusion would bring about a contrariety of decision by the court upon the same subject matter. Not so. The former case was between other parties, involved other facts, and determined other questions. Courts can settle cases only upon such facts as are brought before them. The very idea of constructive notice is that the immediate parties are bound by a proceeding, and that other persons may or may not be, according to circumstances. The former decision was not one *in rem*, but merely disposed of a question which arose between the parties in that suit.

There could be no judgment valid against the world, without notice to the world. The realty was never in the possession of the court. Freeman on Judgments, § 207. The consequences which follow the accidents that have occurred in these proceedings, are not to be borne by the defendant. The error in the return might have been avoided, had more vigilance been exercised by the officer.

No possession was taken by the demandant, either under the levy or the *habere facias* issued to him, to indicate what land he claimed. When he sued for possession, his declaration described only lot 29, when, upon his present theory, he sought to recover lot 32, making no amendment of his declaration before judgment was had.

If the testimony at this or the former trial was not satisfactory and full, it behooved him, if he could, to make it so. In *Etty* v. *Bridges*, 2 You. & Coll. 486, the Vice Chancellor remarks: "A first purchaser, if he cannot acquire possession, must go as near it as he can . . . must set his mark upon the property,

or do every thing reasonably practicable to prevent it from being dealt with in fraud of an innocent purchaser afterwards."

*Plaintiff nonsuit.*

APPLETON, C. J., WALTON, DICKERSON and VIRGIN, JJ., concurred.