## F. E. SMITH v. A. S. KIMBALL.

1. JUDICIAL SALE—*Priority of Liens—Purchaser With Notice.* A purchaser at a judicial sale who, before buying, examines the record of a suit pending in the county in which the sale is made, to determine the priority of liens on the land purchased, in which action it is alleged that the lien of the judgment rendered in the action in which the sale is made is inferior to that of the plaintiff, and in such action it is afterward determined that such lien is inferior, is a purchaser with notice of the pendency of the action to adjust the liens.

2. PURCHASER, *Bound by the Whole Record.* A purchaser of the subject-matter of litigation in a pending suit, who ventures an examination of the record of said action before the purchase, is bound by the whole record and all it discloses.

*Error from Lyon District Court.*

ACTION brought by *Kimball* against *Smith*, to recover possession of certain land in Lyon county, of which the plaintiff alleged that he was both the legal and equitable owner, and entitled to the immediate possession thereof. The answer contained a general denial of all the allegations of the petition, except that the defendant kept the plaintiff out of possession of the land in controversy. Trial by the court at the September Term, 1884, a jury being waived. The court made findings of fact and a conclusion of law, as follows:

"FINDINGS OF FACT.

"1. On the 10th of September, 1860, the United States of America issued to T. H. Walker a patent for the land in controversy in this action, and such land, by virtue of said patent, became the land of one T. H. Walker, and remained his land, subject and liable to the payment of his debts, until the same was sold by the sheriff of Lyon county, Kansas, as hereinafter set forth.

"2. The plaintiff, A. S. Kimball, in an action therein at that time pending, did, on the 16th of November, 1872, at a regular session thereof, recover by the consideration of the district court of Davis county, state of Kansas, a personal judgment against the said T. H. Walker, to whom said patent was issued, for the sum of $8,610 damages and the costs of

said action.   Said judgment is unreversed, and of full force and effect at the several times hereinafter stated.

"3. On the 9th of July, 1873, a duly-certified transcript of the judgment mentioned in the 2d finding was filed in the office of the clerk of the district court of Lyon county, state of Kansas, and thereupon said clerk entered said judgment on the appearance and judgment dockets of his court.

"4. On the 26th of July, 1873, executions were issued on the above judgment by the clerk of the district court of Davis county, Kansas, directed to the sheriffs of Davis, Lyon and Shawnee counties; all of which executions were duly returned by said sheriffs to said clerk, 'No goods or chattels, lands or tenements upon which to make levy.'

"5. On the 8th of November, 1873, an *alias* execution was issued on said judgment by the clerk of said district court of Davis county, directed to the sheriff· of Lyon county, and on the 15th of November, 1873, said sheriff of Lyon county levied said execution upon the lands in controversy, to wit, the west half of the northeast quarter and the east half of the northwest quarter of section five, township nineteen, range eleven east, situate in Lyon county, together with other lands in said county, and caused the same to be duly appraised; and thereafter, on the 8th day of January, 1874, said sheriff returned said execution to the clerk of Davis county district court with the following statement: 'And thereupon the plaintiff's attorneys McClure and Humphrey authorized me to stop further proceedings until further notice from them; and having held this execution for further proceedings until return day without further notice, I hereby return this writ.'

"6. On the 7th day of September, 1874, a *pluries* execution was issued on said judgment by the clerk of the district court of Davis county, directed to the sheriff of said Lyon county, and on said 7th day of September, 1874, the said sheriff levied the execution upon the lands in controversy above described and on other lands in Lyon county, and afterward, on the 16th of September, 1874, caused the said lands to be duly appraised; and on the 2d of November, 1874, said sheriff returned said execution to the clerk of the district court of Davis county, with the following statement in his said return: 'Not having sold any of said lands, I return this execution to said Davis county district court, after having caused this my return thereof to be entered in the aforesaid execution docket.'

"7. On the 23d day of February, 1875, the plaintiff, A. S.

Kimball, commenced an action in the district court of Lyon county, Kansas, against the said T. H. Walker, Edward Carroll, John Bay, as sheriff, and a number of other defendants. The following is a true and correct copy of the petition filed in said cause:

"THE STATE OF KANSAS, COUNTY OF LYON, ss.—*In the District Court for said County.*— A. S. Kimball, Plaintiff, v. Stephen L. Davidson, Thaddeus H. Walker, and Edward Carroll, [omitting the names of twenty-four others,] Defendants.

"The plaintiff says:

"1. That defendants, the State Bank, of Lawrence, Kansas, the Kansas Valley National Bank, of Leavenworth, Kansas, the Capital Bank, of Topeka, Kansas, and the German Savings Bank, of Leavenworth, are each corporations duly organized under the laws of the United States as to national banks, and the other banks under the laws of the state of Kansas.

"2. That on or about the 16th day of November, 1872, plaintiff duly recovered a judgment in the district court sitting in and for the county of Davis, state of Kansas, by the consideration of said court in an action then pending therein against defendant Thaddeus H. Walker, for the sum of eight thousand six hundred and seventeen and $\frac{70}{100}$ dollars, wherein A. S. Kimball was plaintiff and Thaddeus H. Walker was defendant, which sum was adjudged to bear interest at the rate of twelve per cent. per annum from the date of said judgment.

"3. That on the 9th day of July, 1873, plaintiff caused an attested and duly-certified copy of the journal entry of said judgment, together with a statement of the costs taxed against defendant Thaddeus H. Walker, in the cause, to be filed in the office of the clerk of the district court in and for Lyon county, state of Kansas; and the clerk of the last-mentioned district court thereupon immediately entered said judgment on the appearance and judgment dockets in the same manner as if rendered in Lyon county district court.

"4. That on the 8th day of November, 1873, plaintiff caused to be levied of the property of defendant Thaddeus H. Walker, upon an execution lately before issued out of the district court of Davis county, directed to the sheriff of Lyon county, on said judgment, and by said sheriff levied in default of personal property upon the real estate hereinafter described; and that afterward the said real estate, and each and every parcel thereof, was duly appraised under said execution and levy by the said sheriff, by three disinterested householders

of Lyon county, after taking the oath required by law, upon actual view; and a copy of the appraisement was returned to the sheriff, and was by him immediately and duly deposited with the clerk of the district court of Davis county.

"5. That on the 7th day of September, 1874, at the hour of eleven and one-half o'clock in the forenoon of that day, plaintiff caused another levy to be made by the sheriff of Lyon county upon the real estate of defendant Thaddeus H. Walker, in default of personal property, upon an *alias* execution lately before issued out of the district court of Davis county, on said judgment, directed to the sheriff of Lyon county, and that the said lands and each and every parcel thereof so levied upon and hereinafter described was duly appraised upon said *alias* execution by the sheriff of Lyon county, by three disinterested householders of said county, after taking the oath required by law, upon actual view; and a copy of the appraisement returned by said householders to the sheriff, was by him immediately and duly deposited with the clerk of the district court of Davis county.

"6. That by reason of the foregoing facts, plaintiff has a judgment and execution lien prior and superior to all other liens upon all of the following-described real estate, situate in the county of Lyon and state of Kansas, to wit: [Here follows a description of land.]

"7. That defendant, John Bay, sheriff of Lyon county, Kansas, is now proceeding to sell each and every parcel of said real estate, by virtue of an execution issued out of the district court of Leavenworth county, state of Kansas, against the property of defendant Thaddeus H. Walker, on a judgment in said court in favor of Edward Carroll and against Thaddeus H. Walker and Thomas Carney.

"8. That Edward Carroll, and each and every one of the other defendants, except Thaddeus H. Walker and John Bay, sheriff of Lyon county, claims to have some lien upon all of said real estate, but of what nature plaintiff is unable to state, but that said liens, if any, are all inferior, subsequent and subordinate to the lien of plaintiff.

"Wherefore, plaintiff prays that defendants, and each of them, may be decreed to set forth their liens, if any, upon said real estate, and that the priorities of liens may be determined, and that defendant John Bay, sheriff of Lyon county, be directed to sell said real estate, if the same shall not have been sold; and if sold, that he hold the proceeds of such sale, to be paid into court, subject to the further order of the court,

and that the proceeds of such sale may be distributed in accordance with the priorities of liens, and that defendants, and each of them, in case they or any of them fail to set forth their or any of their said liens, be forever barred from asserting said liens against said real estate, or any part thereof, and for such other and further relief in the premises as to the court may seem meet in the premises, and for costs of suit.

"8½. All of the parties who were made defendants in said action, as shown by the petition set forth in the 7th finding, were duly served with a summons issued, or entered their appearance in the action, waiving the issuance and serving of a summons therein. All of defendants named in the petition joined issue upon said petition, except the defendant Edward Carroll, who, though personally served with a summons, made default therein.

"9. On the 30th day of August, 1875, one Edward Carney, by consent of the plaintiff in said action, appeared, and filed his answer therein in words and figures as follows, to wit, (title of cause omitted:) And now comes Edward Carney, one of the defendants herein, and for his answer to the plaintiff's petition says:

"That on the 19th day of February, 1873, Edward Carroll obtained a judgment in the district court of Leavenworth county, Kansas, against Thaddeus H. Walker and Thomas Carney, for the sum of $3,463$\frac{80}{100}$, with interest thereon from the 19th day of February, 1873, at 12 per cent. per annum, and that the plaintiff, Edward Carroll, had a transcript of that judgment filed in the district court of Lyon county, Kansas, and caused execution to issue against certain lands of the defendant Thaddeus H. Walker, in said county, and said execution was duly levied upon all lands of defendant T. H. Walker, in Lyon county, on September 29, 1874, and that said judgment is a first and prior lien on said lands of defendant Thaddeus H. Walker, in said county of Lyon; and defendant further says that on the 20th day of February, 1874, the plaintiff, Edward Carroll, assigned the said judgment to this defendant for value, and that he is the owner and holder thereof.

"On the 30th day of August, 1875, the plaintiff in said action filed a general denial in reply to the answer.

"10. At the September, 1875, term of the district court of Lyon county, the action so commenced came on to be heard upon the issues therein joined, and upon the default of Edward Carroll, and upon the petition, answer and reply so far

as the defendant Edward Carroll was concerned, said cause was tried by the court without a jury.   On the 4th day of November, 1875, at the September, 1875, term of said district court, the court made and filed in said cause its findings of fact and conclusions of law.

"11.  At the September, 1875, term of the Lyon county district court, a judgment was rendered in said cause in conformity with and upon said findings of fact and conclusions of law.   By the terms of said judgment the plaintiff, Kimball, was adjudged and decreed to have the first and prior lien to the land in controversy as against each and every of the parties to that action, including Edward Carroll and Edward Carney, and the land in controversy in this action together with other lands were ordered to be sold to satisfy the judgment and the liens therein found and determined in accordance with their priorities.   Said judgment has never been set aside, appealed from, or reversed.

"12.  On the 16th day of November, 1875, after the rendition of the judgment above referred to, an order of sale was issued thereon to the sheriff of Lyon county, ordering him to sell the land in controversy in this action and other lands described in said judgment.   The order of sale was returned unsatisfied, with an indorsement thereon that the land in controversy was not sold, for want of bidders.   On the 18th day of May, 1877, an *alias* order of sale was duly issued upon said judgment to the sheriff of Lyon county, who, on the 2d day of July, 1877, under and by virtue of said order and in conformity therewith, sold the land, which sale was duly confirmed by the district court of Lyon county, on July 2, 1877, at a regular adjourned term of the March, 1877, term of said court.

"13.  On the 24th day of July, 1877, the sheriff of Lyon county, in accordance with the sale and confirmation thereof as aforesaid, duly made, executed, acknowledged and delivered to the plaintiff in this action a sheriff's deed purporting to convey the land in controversy herein, to wit, the west half of the northeast quarter and the east half of the northwest quarter of section five, township nineteen, range eleven, in Lyon county, which said deed was based upon said sale and confirmation, and was recorded in the office of the register of deeds of Lyon county, on July 26, 1877, in book four of deeds, page 404.

"14.  The defendant F. E. Smith was at the time of the

commencement of this action in the actual possession of the land in controversy.

"15. On the 19th day of February, 1873, Edward Carroll recovered a judgment against T. H. Walker in the district court of Leavenworth county, in an action therein pending wherein he was plaintiff and T. H. Walker and Edward Carney were defendants, for the sum of $3,463.80 and costs of suit, which judgment was to draw interest until paid at the rate of twelve per cent. per annum. A duly-certified transcript of that judgment was filed in the office of the clerk of the district court of Lyon county, on the 27th day of March, 1873, and the same was entered upon the appearance and judgment dockets of the Lyon county district court by the clerk thereof on the day that the same was filed.

"16. On the 19th day of January, 1875, an execution was issued upon said judgment by the clerk of the district court of Leavenworth county, to the sheriff of Lyon county. On the 21st day of January, 1875, the sheriff of Lyon county duly levied the said execution upon a large amount of land in Lyon county, including the land in controversy in this action, and having duly appraised and advertised the same for sale, the sheriff, under said execution, sold the lands in controversy to the defendant F. E. Smith on the 1st day of March, 1875, which sale was afterward confirmed by the district court of Leavenworth county; and upon such confirmation a sheriff's deed purporting to convey the land in controversy to the defendant Smith was duly executed and delivered to him, on the 4th day of October, 1875, which deed was duly recorded in the office of the register of deeds for Lyon county, on the 4th day of October, 1875, in book 'Y,' on page 266.

"17. On the return of the sheriff of Lyon county to the execution issued by the clerk of the district court of Leavenworth county, January 19th, 1875, is the following statement, to wit: 'On the 23d day of February, 1875, A. S. Kimball brought said suit in the district court of Lyon county against the various creditors of T. H. Walker to test the priority of liens on certain judgments rendered against said T. H. Walker on transcripts filed in the district court of Lyon county, making Edward Carroll a party defendant in said action, and also making the sheriff of Lyon county a defendant therein, and restraining him from applying the proceeds of said sales on this execution in satisfaction of the judgment in favor of Edward Carroll, but requires the same to be paid into the district

court of Lyon county, when priority of liens is determined by said court.'

"18. On the 30th of August, 1875, the following stipulation was filed in the district court of Lyon county with the papers in the case of A. S. Kimball v. T. H. Walker, Edward Carroll, John Bay, and others, to wit:

"'It is hereby agreed and stipulated that the injunction heretofore obtained in the above-entitled cause shall be discharged to the sheriff of Lyon county, Kansas, so far as he had heretofore made sales on the Carroll judgment in case of Edward Carroll v. T. H. Walker and Thomas Carney.

"'Dated August 30, 1875.'

"After the execution of the above stipulation, the sheriff of Lyon county paid on the Carroll judgment the proceeds of the sale of the lands in controversy, purchased by the said F. E. Smith on the 1st of March, 1875, at the sheriff's sale as aforesaid. Before the sheriff of Lyon county sold the land in controversy on the Carroll judgment, and on or about the day of the sale, the sheriff asked some of the attorneys of Kimball in the action then pending in Lyon county, in which the judgment was rendered upon which the sale was made by virtue of which Kimball now claims said land, what he should do about making such sale on the Carroll judgment, and such attorneys told him to sell the land on said judgment, and hold the money realized from such sale subject to the final determination of the court in the Kimball case. When the land in controversy was first advertised for sale on the Carroll judgment, the defendant herein, F. E. Smith, determined to bid on the land at such sale, but after the commencement of the Kimball suit he gave it up before the day of such sale. On the day of such sale, and after the sheriff who made such sale had been advised by some of Kimball's attorneys to make such sale as hereinbefore found, the sheriff referred Smith to the prayer of Kimball's petition in the action of Kimball then pending, and told Smith that he was advised to make such sale by Kimball's attorneys, and retain the purchase-price thereof subject to the order of the court in Kimball's action. Thereupon, Smith examined the Kimball petition before the said sale, and believing from its prayer and the statement made to him by the sheriff, that Kimball's attorneys had advised him to make said sale, that Kimball desired the sale to be made, and Kimball's only aim was to get the proceeds of such sale, he bid off the land at said sale at two-thirds of its appraised value, and paid the sheriff the purchase-price there-

31 — 36 KAS.

of, when he would not have bid on the land at said sale but for what he believed from the prayer of the Kimball petition, and what the said sheriff told as hereinbefore found.

"After Smith had bid off and paid for the land at said sale, and while the money paid for the same by Smith was in the hands of the sheriff, and before the sheriff made his return of said sale to the Leavenworth county court, he (the sheriff) and Kimball's attorneys in the Lyon county suit went to the judge of the district court at chambers, and Kimball's attorneys applied for and the judge granted a restraining order in Kimball's suit in Lyon county, restraining the sheriff from returning the purchase-price of said land to the Leavenworth county court until the further order of the court in Kimball's suit. After the stipulation was filed to discharge the restraining order, or injunction, as hereinbefore found, the sheriff paid the said money to Carroll's attorney, on his said judgment, and the sale was then confirmed by the district court of Leavenworth county, Kansas, and the sheriff upon such confirmation made to Smith the sheriff's deed to the land in controversy by virtue of which Smith now claims to own the said land."

"CONCLUSION OF LAW.

"The plaintiff ought to recover possession of the land in controversy."

New trial denied. Judgment for plaintiff *Kimball.* The defendant *Smith,* claiming that the court below erred in its conclusion of law upon the facts found, and in rendering judgment for the plaintiff, brings the case here.

*Peyton, Sanders & Peyton,* for plaintiff in error.

*J. R. McClure,* and *C. N. Sterry,* for defendant in error.

Opinion by SIMPSON, C.: The plaintiff in error, F. E. Smith, purchased the land at a sheriff's sale, on the 1st day of March, 1875. This sale was made by the sheriff of Lyon county, by virtue of an execution to him directed from the district court of Leavenworth county, in a case wherein Edward Carroll was plaintiff and T. H. Walker and others were defendants. Carroll had recovered a judgment against Walker, and execution had been issued, the land levied upon, appraised,

advertised, and sold to plaintiff in error. At the time of the purchase by Smith, the plaintiff in error, there was pending in the district court of Lyon county an action in which A. S. Kimball, defendant in error here, was plaintiff, and T. H. Walker, Edward Carroll and others were defendants, including the sheriff of Lyon county, who made the sale to Smith. In that action Kimball averred that he had a judgment, an execution lien upon the land purchased by Smith at the sheriff's sale, and that his lien was the first and superior lien to all others, reciting among others the lien of the judgment obtained by Carroll in the Leavenworth district court, and declaring that it was inferior, subsequent and subordinate to his. Carroll and all other defendants were duly served with process in that action, and all appeared except Carroll, and joined issue. Carroll made default. The action was prosecuted to final judgment, with reasonable diligence, it having been commenced on the 23d day of February and concluded at the September term, 1875. The decree of the court sustained the averments of the petition, and adjudged that Kimball had the first lien.

The first question arising on this record is, whether or not Smith was a purchaser *pendente lite*. The solution of this question depends, among other things, upon the construction that is to be given § 81 of the code of civil procedure. That section reads as follows:

"SEC. 81. When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within sixty days after the filing of the petition."

Is this section to be considered as an independent statutory provision, or is it to be construed in the light of the authorities generally on the subject of *lis pendens*, on the theory that it is designed to embody the doctrine that has long formed a part of the equity jurisprudence of this country, and to give that principle force and effect in the procedure of this state?

If this is the proper view, then it is important to understand the meaning, scope and bearing of the doctrine of *lis pendens* at the time of its adoption by the legislature of the state. We are commanded by the code to give its provisions a liberal construction with a view to promote its object; but the mental hesitation to give the statute a construction as wide and a meaning as comprehensive as the generally-accepted doctrine of *lis pendens*, is occasioned by the use of the word "title." A narrow and restricted meaning of this word would confine the operation of a principle "based on a public policy imperatively demanded by a necessity which can be met and overcome in no other manner" to that class of actions in which there is a contention as to which one of two asserted paper titles is the better — a contest between patents, or deeds; a struggle between a devise by will and the laws of descent, or to some of the various other disputes as to title in its restricted sense, excluding all mortgage, purchase-money and judgment liens, as well as bonds and contracts for the sale and conveyance of real estate.

"The doctrine of *lis pendens*, as generally understood and applied by the courts of this country, is not based upon presumptions of notice, but upon a public policy imperatively demanded by a necessity which can be met and overcome in no other manner. It is a careless use of language which has led judges to speak of it as notice because it happens to have, in some instances, a similar effect with notice." (Freeman on Judgments, § 191, and authorities cited.)

The section of our code now under consideration departs in this respect from the most approved statements of the reason of the rule and the manner of its operation, and declares in express terms that when the petition has been filed the action is pending, *so as to charge third persons with notice of its pendency*. With this solitary exception it seems that this section embodies the best exposition of the rule that binds a third person who intermeddles with the subject-matter of a suit pending. Accepting Justice Story's definition of *lis pendens*, reviewing the cases in which there has been an application of the doctrine, with the general similitude of our statute to a rule

that, in the language of Chancellor Kent, "would not have existed, and have been supported for centuries, if it had not been founded in great public utility," we give the word "title" in the section its broadest meaning and most comprehensive signification.    Judge Story's definition is:

"A purchase made of property actually in litigation, *pendente lite*, for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit." (1 Eq. Jur., § 405.)

Among the actions to which this doctrine will apply are suits for the foreclosure of unrecorded mortgages, (*Chapman v. West*, 17 N. Y. 125; *Center v. Bank*, 22 Ala. 743; *McCutchen v. Miller*, 31 Miss. 65;) to foreclose vendors' liens; to set aside a decree of partition; to enforce the specific performance of a contract for the sale of real estate; to enforce a charge against real property whatever be the form of the action, (*Seabrook v. Brady*, 47 Ga. 65.)    Actions in the nature of creditors' bills have been considered as giving notice to subsequent purchasers of the particular property involved in the controversy. (*Jackson v. Stone*, 13 Johns. 447; *Bradley v. McDaniel*, 3 Jones, 128; *Fogerty v. Sparks*, 22 Cal. 143; *Bolin v. Connelly*, 73 Pa. St. 336; *Hill v. Oliphant*, 41 id. 364; and see generally on this subject, Wade on the Law of Notice, § 342, and authorities cited.)

This view is greatly strengthened by a reference to those cases decided by this court in which the doctrine of *lis pendens* has been noticed or commented on; in *Bayer v. Cockerill*, 3 Kas. 283, the legal title to the land was in Clarkson as trustee for Mrs. Hughes.    He made a conveyance to Todd, but signed it in his individual capacity.    Todd mortgaged to Cockerill to secure a note of $1,000.    On the 13th of February, 1863, Cockerill commenced his action to foreclose the mortgage.    On the 2d day of June, 1863, Mrs. Hughes by a quitclaim deed conveyed the property to Bayer, the plaintiff in error.    Bayer, having been made a party to the foreclosure

suit in October following his purchase, filed an answer deny-
ing the allegations of the petition, and setting up his title.
On this state of facts the court held, CROZIER, C. J., deliver-
ing the opinion:

"The suit in the court below was commenced February
13th, 1863; the summons was served on the 23d of the same
month, and the publication was completed on the 6th of April
in the same year. Under these circumstances, no person, ac-
cording to the eighty-seventh section of the code, could acquire
an interest in the real estate against Cockerill's rights. These
facts as between Cockerill and Bayer gave the former the
right to subject the lands to the payment of his claims."

Here a mortgage lien is held to be within the rule, and the
word "rights" is synonymous with title. This case gives the
statute the liberal construction, which we think is the proper
one.

The case of *Dresser v. Wood*, 15 Kas. 344, was a contest
between two mortgagees for a priority lien. Wood's mort-
gage was executed first, that of Warner, Mowry & Hawkins
twenty days later. There was a misdescription of the land
in the mortgage of Wood, and he commenced an action to
reform. To this action W., M. & H. were made parties, and
in twenty-three days after the commencement of the action
they assigned their mortgage to Dresser. The action resulted
in a decree reforming the mortgage of Wood, and declaring
it a first lien on the land. Dresser afterward brought his
action to foreclose the mortgage assigned him by Warner,
Mowry & Hawkins, and made the mortgagors and Wood
parties. Wood answered, setting up his mortgage as prior,
reciting the mistake, action to reform, decree of reformation,
and notice to plaintiff Dresser of all these things. To escape
an application of the rule of *lis pendens* to him, Dresser con-
tended that the mortgage was owned by Warner, Mowry &
Hawkins as copartners, and that as no judgment could be
rendered against them on a service made on Warner alone, (he
being the only one served in the Wood action to reform, at
the time of the assignment of their mortgage to him,) there-
fore, that no *lis pendens* could have existed when Dresser

purchased the mortgage from Warner, Mowry & Hawkins. The court held, VALENTINE, J., delivering the opinion:

"That whenever any member of a copartnership firm is served with a summons, a *lis pendens* is at once created to such an extent that no person can purchase from any member of the firm any portion of the subject-matter of the action, so as to affect the rights of the plaintiff in the action."

This was a contest between lien-holders; and again the court used the word "rights" as distinguished from the word "title" in its most restricted sense.

We gather from the record in this case that Carroll was made a party to the action of Kimball *v.* Walker and the other lien-holders in the Lyon county district court, and that there was an averment in the petition of Kimball that his lien was superior to that of the Carroll judgment; that the sheriff of Lyon county, who was made a party to the action, was then proceeding to sell each and every parcel of land, by virtue of an execution issued out of the district court of Leavenworth county against the property of the defendant Walker, on a judgment in said court in favor of Carroll. The sheriff appeared in the action and joined issue upon the petition, but Carroll made default. On the 30th day of August, 1875, one Edward Carney, by the consent of the plaintiff Kimball, appeared, and filed his answer, in which he alleged that Carroll's judgment was the first lien on the Walker lands; and that the plaintiff Edward Carroll had caused an execution to issue and be levied upon the lands, on the 20th day of September, 1874; that on the 20th day of February, 1874, Carroll had assigned the judgment to Carney; and that he was the owner and holder thereof. Smith, plaintiff in error, purchased on the 1st day of March, 1875, at a sheriff's sale on the Carroll judgment. This was six days after the commencement of the Kimball action in the Lyon county district court.

The contention of counsel for plaintiff in error is that Carroll was not the owner of the Leavenworth judgment, but long before the sale had assigned it to Carney; that he had no control over it, and Smith could not be bound by a suit

against Carroll; and that as Carney as assignee of Carroll did not become a party to the action until long after the sheriff's sale at which he purchased, he cannot be bound by the acts of Carney subsequent to the sale; that there was an interval in this litigation over the land of Walker, when the laws were silent and the doctrine of *lis pendens* was suspended; and that the rule of *caveat emptor* that applies with all its rigor to Smith was temporarily paralyzed. In support of this view, two rules of the doctrine of *lis pendens* are invoked: one is that the interest acquired must have been from some one of the parties to the action adverse to the plaintiff, and the other is that if the purchase is made before the vendor is impleaded, the purchaser is not subject to *lis pendens*. We have no disposition to dispute the correctness of the rules, or to deny their operation in every case in which their application is fairly justified by the facts; but under all the circumstances, we are unable to see how they can be invoked to aid the plaintiff in error in this case. It cannot be said with any propriety of language or legality of expression that Smith was a purchaser from Carroll or Carney. He made no agreement with either of them, nor did he arrange any terms or conditions of sale with them. He bought at a sheriff's sale the land that was the subject-matter of the litigation in a suit then pending in the county in which he made the purchase, in which the plaintiff in the suit pending averred that the judgment under which he bought and the lien created by it were inferior and subordinate to that of the plaintiff. He bought too, after he had examined the record of that action, after he had learned the facts from the officer who made the sale, who was also a party to the action; and bought after having acquired an actual notice of the pendency of the action, the averments of the petition, and everything the record disclosed. This was enough to bind him. *Lis pendens* is notice of every fact contained in the pleadings and apparent on the face thereof, and of those other things of which the facts so stated necessarily put the purchaser on inquiry. (*Jones v. McNarrin*, 68 Me. 334; *Lockwood v.*

1. Judicial sale— priority of liens — purchaser with notice.

*Bates,* 1 Del. Ch. 435; 12 Am. Rep. 121; Freeman on Judgments, §199.)  As a purchaser at that judicial sale, he comes into this action with the deed of the sheriff, and asserts the title so derived as against the title of the plaintiff.  He acquires by this sale all the interest that Carroll as a judgment creditor took in the land by virtue of his levy.  It is apparent from the record that the title of the action in which the execution was issued was not changed on account of the assignment of the judgment by Carroll to Carney, but that the writ ran in the name of Carroll *v.* Walker, and that the proceeds of the sale were paid to the attorney of Carroll.

We are not to be understood that Carney had no right as assignee of the judgment to use the name of Carroll in the collection of it, but as suggesting to the plaintiff in error that, as on the face of the record he claims to now have all the right that Carroll had, he must not complain if in some stage of the proceedings other parties, relying as he evidently did, on the recitations in the execution process, (these being the direct result of the act of Carney, who had ordered the issuance of and controlled the execution,) should claim that certain results followed the use of the name of Carroll; because if we should hold that the execution was improperly issued in the name of Carroll as the judgment creditor, and could alone issue in the name of Carney, the effect might be to invalidate the deed of the plaintiff in error.  Having purchased under the Leavenworth judgment, by every rule of law he is charged with all it discloses, and having taken

2. Purchaser, bound by the whole record.

upon himself to examine the record in the Lyon county case, and after such examination having purchased the land in litigation, "the subject-matter of the action," he is bound by that record, and all it discloses.  We therefore conclude that he comes within the operation of the eighty-first section of the code, and acquired his interest in such a manner and under such circumstances as to be charged with notice of the pendency of the action of Kimball *v.* Walker, *et al.,* in the district court of Lyon county.

We might very properly rest this case here, but as some

other questions are raised, and very strongly urged on the attention of the court, we will notice them. Kimball's judgment was first rendered, and he had the first levy on the land, on the 15th day of November, 1873. He had another levy made on the 7th day of September, 1874, and commenced his action to determine priority of liens on the 23d day of February, 1875. A decree awarding him a first lien was rendered at the September term of that year, so that, conceding the most rigid construction to §468 of the code, the plaintiff in error takes nothing by it. The first levy was followed by a second before the expiration of one year from the date of the first levy, and that followed within a year by an adjudication of priority. This certainly makes Kimball first in time, and first in legal right. We suppose that a judgment creditor can control his own execution; that after a levy, or appraisement, or an appraisement of sale, or even on the day of sale, he can order the sheriff to return it without further proceedings, so as to give the judgment debtor more time to pay, or to make a private sale, or for any other reason. By so doing he cannot, of course, interfere with or postpone the due service of some other judgment creditor's execution, whether that other creditor has a superior or an inferior lien. All the statutes do require in order for the judgment creditor to preserve his preference of lien, is to have an execution taken out and levied before the expiration of one year next after the rendition of his judgment; then after the expiration of the year the levy preserves the seniority of the lien, and probably will preserve it until the judgment becomes dormant, or barred.

It is claimed by the plaintiff in error that by reason of certain recitals in the prayer of the petition in the action of A. S. Kimball *v.* T. H. Walker, *et al.*, instituted in the Lyon county district court on the 23d day of February, 1875; and that by reason of certain instructions given by the attorneys of Kimball in that action to the sheriff of Lyon county, respecting the execution on the Carroll judgment, which had been issued to him from the Leavenworth district court, these instructions being communicated by the sheriff to the plaintiff

in error; and that by reason of an attempt on the part of the attorneys of Kimball to enjoin the sheriff of Lyon county from paying into the district court of Leavenworth county the proceeds of the sale on that execution, and of their procurement of an injunction against the sheriff, and their subsequent dissolution of it by stipulation, Kimball is estopped from questioning Smith's title to the land by virtue of the sale under which he (Smith) claims.

We will consider these three propositions in the order in which they are made.

As to the first, that of the recitals in the prayer of the petition, it appears from the 18th finding of the facts by the court below:

"That before the sheriff of Lyon county sold the land in controversy on the Carroll judgment, and on or about the day of the sale, the sheriff asked some of the attorneys of Kimball in the action then pending in Lyon county in which the judgment was rendered, upon which the sale was made by virtue of which Kimball now claims said land, what he should do about making such sale on the Carroll judgment, and such attorneys told him to sell the land on said judgment, and hold the money realized from such sale subject to the final determination of the court in the Kimball case; that when the land in controversy was first advertised for sale on the Carroll judgment, the defendant herein, F. E. Smith, determined to bid on the land at such sale, but after the commencement of the Kimball suit he gave it up before the day of sale; that on the day of such sale, and after the sheriff who made such sale had been advised by some of Kimball's attorneys to make such sale, as hereinbefore found, the sheriff referred Smith to the prayer of Kimball's petition in the action of Kimball then pending, and told Smith that he was advised to make such sale by Kimball's attorneys, and retain the purchase-price thereof subject to the order of the court in Kimball's action; and thereupon Smith examined the Kimball petition before the said sale, and believing from its prayer and the statement made to him by the sheriff that Kimball's attorneys had advised him to make said sale, that Kimball desired the sale to be made, and Kimball's only aim was to get the proceeds of such sale, he bid off the land at said sale at two-thirds of its appraised value, and paid the

sheriff the purchase-price thereof, when he would not have bid on the land at said sale but for what he believed from the prayer of the Kimball petition, and what the said sheriff told, as hereinbefore found. After Smith had bid off and paid for the land at said sale, and while the money paid for the land by Smith was in the hands of the sheriff, and before the sheriff made his return of said sale to the Leavenworth county court, he (the sheriff) and Kimball's attorneys in the Lyon county suit went before the judge of the district court at chambers, and Kimball's attorneys applied for and the judge granted a restraining order in Kimball's suit in Lyon county, restraining the sheriff from returning the purchase-price of said land to the Leavenworth county court, until the further order of the court in Kimball's suit. After the stipulation was filed to discharge the said restraining order or injunction as hereinbefore found, the sheriff paid the said money to Carroll's attorney on his said judgment, and the sale was then confirmed by the district court of Leavenworth county, Kansas, and the sheriff, upon such confirmation, made to Smith the sheriff's deed to the land in controversy, by virtue of which Smith now claims to own the said land."

It will be seen that, in considering the effect of an examination of the record of the Lyon county case by Smith, we have virtually disposed of this question. If Smith had determined to examine the papers in the case, it was his bounden duty to examine them all, to search the whole record, and to inform himself of everything disclosed by the pleadings in that case. It cannot be permitted that a party may select some sentences from the prayer of a petition, or some detached statements or averments from the body of the petition, and because when read disconnected from what precedes or follows they may appear favorable, he can rely on them to estop the pleader. On the contrary, when a purchaser of the subject-matter of litigation in a pending suit ventures an examination of the pleadings in that action with a view to a purchase, it is an obligation cast upon him by the law to peruse and understand the whole record, because if he buys he is bound by it as an entirety, and not in detached sentences or in disconnected portions.

However strongly a pleader may be bound, and however

much he may be estopped by the averments of facts in the body of his pleadings, it is doubtful whether he is bound or estopped by his prayer for relief. He is supposed to know the facts upon which he predicates his action, and to state them as he understands them, but the relief to which he is entitled on the facts related is a question for the court, and over which he has no control.

It is claimed that Kimball is estopped by reason of certain instructions given by his attorneys in the Lyon county case to the sheriff of that county, respecting the execution then in his hands on the Carroll judgment. The facts are, as found by the court below, that about the day of the sale the sheriff asked some of the attorneys of Kimball what he should do about making the sale on the Carroll judgment, and they told him to sell, and hold the money subject to the determination of the court in the Kimball case. So far as the first part of the answer is concerned, it was but an expression of the legal duty of the sheriff, just what the statute required him to do, or be subject to an amercement. It may be that, under the circumstances, the second proposition embodied in the answer was safe advice for the sheriff. He was a party to the Kimball action, and might or might not be bound by a decree in that action; so that, taking the whole answer together, it was truthful, and for the protection of the sheriff. It was made to the sheriff at his own request, presumably for his benefit. Smith was not present; no declaration was made to him that misled him; he knows what was said from the sheriff only. It cannot be that, under such circumstances, Kimball or his attorneys are estopped.

Finally, it is urged that Kimball is estopped because, after the sale, his attorneys procured a restraining order on the sheriff of Lyon county to prevent him from returning the money received on the sale to Smith to the district court of Leavenworth county. As this happened after the sale, it is somewhat difficult to see how it created an estoppel on Kimball; or how it operated on the mind of Smith to induce him to make the purchase; or how it can be construed into a dec-

laration on the part of Kimball to Smith that he could take the land, and Kimball would rely on a fight for the proceeds of the sale. Putting it in its strongest light for the plaintiff in error, it might be said to strengthen the claim that Kimball, by the recitations in the prayer of his petition and the declaration of his attorneys to the sheriff, had abandoned all thought of holding the land subject to his lien, but that his whole effort was directed to a control of the proceeds of the sale and its application to the payment of his judgment. As we have seen, this is a mistaken view of Kimball's prayer; of the action of his attorneys in advising the sheriff; and of their attempts to control this fund. They are not estopped by any fair proceedings that were taken to secure priority of lien and full payment of their judgment.

If a purchaser at a judicial sale can, by any elasticity of phraseology, be said to have equities, the case of the plaintiff in error is not one that approaches very near the boundary-line of the domain of law and the outlying commons of the more liberal branch of our jurisprudence. On an examination of the whole record, the only thing that can be said in his favor is, that he paid his money on the sale under the Carroll judgment; but he did this with notice and actual knowledge of all the facts of both the suit in Leavenworth and the one in Lyon county; and this he did at his peril, and the result is, that he lost.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered,

All the Justices concurring.