HENRY W. KING *et al.* v. W. B. GLEASON *et al.*
### No. 61.

AMENDMENT—*of petition by changing prayer, will not justify exclusion of all evidence under amended petition.* Where plaintiffs in their first petition set up that, through a conspiracy formed for that purpose by the defendants, a part of the defendants fraudulently procured certain goods of the plaintiffs and then attempted to defeat a recovery therefor by pretending to transfer their property to the other defendants, and the relief prayed for was a judgment against the parties who purchased the goods, and that said judgment be satisfied by a sale of the property so fraudulently in the hands of the other conspirators, and the plaintiffs afterwards amended their petition by setting up substantially the same state of facts but praying judgment against all of the conspirators for damages caused by the fraudulent acts, *held*, that it was error for the court to refuse to permit the plaintiffs to introduce any evidence under their amended petition.

Error from Jackson District Court. Hon. Louis A. Myers, Judge. Opinion filed December 18, 1897. *Reversed.*

*C. N. Sterry* and *Edwin A. Austin*, for plaintiffs in error.

*James H. Lowell* and *Hayden & Hayden*, for defendants in error.

WELLS, J. This case was before the District Court of Jackson County upon a second amended petition, filed therein on April 6, 1891. A brief synopsis of said amended petition is as follows :

1. The partnership of plaintiffs as Henry W. King & Co., pleaded.

2. That the defendant, the First National Bank of Conneautville, Pa., is a corporation under act of Congress. That defendants W. B. and W. S. Gleason, for two years last past, have been partners as Gleason & Co , doing a retail mercantile business at Holton,

142          KING v. GLEASON.

N. Dept.          Opinion.  Wells, J.          6 Kan. App.

Kan.   That up to July 1, 1890, Gleason & Co. carried a stock of goods not exceeding in value thirteen thousand dollars.   That W. B. Gleason owned real estate in Cloud County, Kansas, worth eight thousand dollars, and in Pennsylvania, worth five thousand dollars.

3.   That twelve thousand dollars in value was as large a stock of goods as they ought to carry.

4.   That in July, 1890, they should have decreased their stock rather than increased it.

5.   In July and August, 1890, Gleason & Co. were indebted to others than their codefendants herein, for not less than ten thousand dollars, and now claim that they were indebted to their codefendants about twenty thousand dollars.

6.   In July or August, 1890, defendants entered into a conspiracy to defraud wholesale houses.

7.   Pursuant to said conspiracy, Gleason & Co., in July and August, 1890, purchased of fifty-five scattered wholesale houses goods aggregating in value eighteen thousand dollars, upon a credit of from seven months' to a year's time.   Among the others, they purchased of the plaintiffs goods worth $752.25, upon seven months' credit.

8.   At and prior to said purchase, Gleason & Co. represented that they were solvent, which was fraudulent and untrue if they owed their codefendants as now claimed.   Plaintiffs sold said goods, relying upon said representations.

9.   On December 26, 1890, W. S. Gleason pretended to sell his interest in the firm of Gleason & Co. to W. B. Gleason; the next day W. B. Gleason gave five chattel mortgages on all his goods to his codefendants other than the Gleasons, and delivered the possession thereof to them, and then made a general assignment for the benefit of all his creditors, "having first taken care to prevent any property whatsoever getting into the hands of his assignee."   That thereupon defendants other than the Gleasons took all of said property and converted it to their own use, to the damage of the plaintiffs in the sum of one thousand dollars, and defendants are indebted to them therefor.

10. Copies of the five chattel mortgages are made a part hereof by reference, as follows: (*a*) W. B. Gleason to First National Bank, Conneautville, Pa., for $1,202.40; (*b*) W. B. Gleason to J. C. Sturtevent, for $12,216.34; (*c*) W. B. Gleason to N. H. Holmes, for $1,737.54; (*d*) W. B. Gleason to R. B. Myers, for $1,027; (*e*) W. B. Gleason to J. C. Sturtevent, for $1,202.40; and also a copy of the general assignment.

11. W. B. Gleason and W. S. Gleason have a secret trust in said property and have no property subject to execution; and the other defendants, except W. S. Gleason and A. H. Williams, are non-residents of Kansas, and, unless restrained, will sell said goods and take the proceeds beyond the jurisdiction of the court.

12. Judgment is demanded against each of said defendants, except Mrs. W. S. Gleason and A. H. Williams, for one thousand dollars as damages sustained, and an order that a temporary injunction issue; followed by a prayer for general relief.

An answer and reply were duly filed, the case regularly called for trial, a jury impaneled, and a witness sworn and put upon the stand, when the court sustained an objection to the introduction of any evidence under the second amended petition, and rendered judgment for the defendants for costs. A motion for a new trial was duly made and overruled, and the case is now before us for review.

We have sought in vain through the two briefs filed by the plaintiff in error for that "concise abstract or statement of the case," and "specifications of error relied upon, set out separately and particularly," mentioned and required by rule six of this court, but we have nevertheless examined the case on its merits.

The primary question in this case is, Did the court err in excluding evidence under the second amended petition? The exact reason that actuated the court in sustaining the objection to evidence, we can only

144      KING v. GLEASON.

N. Dept.      Opinion.    Wells, J.      6 Kan. App.

infer. It may have been either because the court thought the petition did not state a cause of action, or that the plaintiffs were estopped from asserting the cause of action set up therein. It seems to us that, if the statements in the second amended petition were all true, the plaintiffs would be entitled to some relief, and, that they were not entitled to the specific relief prayed for, would not preclude them from introducing any evidence, or from receiving such relief as the evidence might show they were entitled to.

The other question is, Had the plaintiffs estopped themselves from claiming any relief under their last amended petition? It is claimed by defendants in error that the plaintiffs, by their first petition, having declared upon the contract of sale and prayed for judgment for the price of the goods, will not afterwards be allowed to repudiate the sale and collect damages from the conspirators for fraudulently obtaining them. It seems to be well settled by the Supreme Court of Kansas that, where a party has a right to a choice between two inconsistent remedies, and, with full knowledge of the facts, chooses one of them, he cannot afterwards change his election and choose the other. *Plow Co. v. Rogers*, 53 Kan. 743; *National Bank v. National Bank*, 57 id. 115; *City of Larned v. Jordan*, 55 id. 124.

The plaintiffs in their first petition set up substantially the same state of facts as in their last petition, and asked a judgment against Gleason & Co. for the value of the goods, wares and merchandise procured by them of plaintiffs through a conspiracy as therein alleged, and that said judgment be paid from the proceeds of the property of Gleason & Co. attempted to be diverted from such appropriation. In the second amended petition the plaintiffs asked a judgment

against all of the defendants, except two, for damages for fraudulently procuring the goods from the plaintiffs through a conspiracy formed for that purpose. These two positions are not so inconsistent, under the authorities hereinbefore cited, as that the election of one precludes the right to pursue the other. As was said by Commissioner Simpson, in *Smith v. Kimball* (36 Kan. 492): ''However strongly a pleader may be bound, and however much he may be estopped by the averments of facts in the body of his pleadings, it is doubtful whether he is bound or estopped by his prayer for relief. He is supposed to know the facts upon which he predicates his action, and to state them as he understands them, but the relief to which he is entitled on the facts related is a question for the court, and over which he has no control.''

The court committed reversible error in refusing to hear evidence under the last petition. The judgment of the court below will be reversed, and a new trial ordered.