HORACE M. JACKSON v. CHARLES R. KING, THE
MERCHANTS' SAVINGS BANK OF PROVIDENCE AND
FRANK G. CROWELL, *Receiver*.

**No. 557.*** ( 58 Pac. 1013.)

1. RECEIVERS—*Rights of Parties to Suit.* A party upon whose
   application a receiver is appointed in a civil case has no greater
   interest in the proceeds of such receivership than he would have
   had if the receiver had been appointed upon the application of
   any one of the other litigants in the action.

2. ———— *Officer of Court—Title to Property.* A receiver is the
   hand of the court of which he is an officer; his appointment de-
   termines no right, nor does it affect the title of the property in any
   way, and his holding is the holding of the court.

3. LIEN OF JUDGMENT—*Foreclosure—Order of Sale.* Section 476
   of chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4729),
   does not apply to mortgage liens after foreclosure so as to give
   other judgment creditors prior liens on the mortgaged property if
   order of sale be not issued under said foreclosure proceedings
   within one year after the rendition of the judgment therein.

Error from Atchison district court; W. D. WEBB,
judge.   Opinion filed November 1, 1899.   Affirmed.

*Jackson & Jackson,* for plaintiff in error.

*B. F. Hudson,* for defendants in error.

The opinion of the court was delivered by

WELLS, J. : The controversy in this case is over the
right to $395.02 collected by the receiver and ordered
by the district court to be paid to the defendant in
error, the Merchants Savings Bank of Providence.

The plaintiff in error presents and argues two
propositions of law, and contends that if either is cor-
rect the judgment or order complained of should be
reversed, while the defendant in error contends that

* Pending in supreme court on appeal.—REP.

only the second proposition was submitted to the district court and that only should be considered by this court.

The first proposition is: "The receiver was appointed upon the application of plaintiff in error, and thereunder took possession of the property and collected the rents for his benefit." We do not think this is the law. In High on Receivers, section 1, it is said:

"A receiver is an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation *pendente lite*, when it does not seem reasonable to the court that either party should hold it. He is not the agent or representative of either party to the action, but is uniformly regarded as an officer of the court, exercising his functions in the interest of neither plaintiff nor defendant, but for the common benefit of all parties in interest. Being an officer of the court, the fund or property entrusted to his care is regarded as being *in custodia legis*, for the benefit of whoever may eventually establish title thereto, the court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred upon him by the order of his appointment, or such as are derived from the established practice of courts of equity."

The same authority, in section 5, says:

"A receiver being appointed for the preservation of the fund or property *pendente lite*, and for its ultimate disposal according to the rights and priorities of the parties entitled, the remedy is regarded as in the nature of a sequestration rather than as an attachment of the property, and it ordinarily gives no advantage or priority to the person at whose instance the appointment is made over other parties in interest. Nor does it change the title to or create any lien upon the property ; its purpose in this respect being rather like that of an injunction *pendente lite*, to preserve the

subject-matter until the rights of all parties may be judicially determined. And in the exercise of this branch of its extraordinary jurisdiction, equity reverses the ordinary course of administering justice, and levies upon the property a kind of equitable execution, by means of which it makes a general appropriation thereof, leaving the question of who may finally be entitled to be determined thereafter.''

In *Hannah K. Chase's Case*, 1 Bland Ch. (Md.) 206, 17 Am. Dec. 279, Bland, chancellor, said: ''The appointment of a receiver does not involve the determination of any right, or affect the title of either party in any manner whatever.''

A receiver has been described as the hand of the court of which he is an officer; his appointment determines no right, nor does it affect the title of the property in any way, and his holding is the holding of the court. While he can be appointed only on the application of some one who appears to have an interest in the subject-matter, the applicant gets no greater rights than if one of the other litigants had made the application.

The second proposition argued, and this it is insisted by the defendant in error is the only question now before us, is: '' The lien of the judgment (in favor of King) was lost as against other judgment creditors by failure to have execution issued and levied within one year.'' This raises the clearly defined question, Does section 476 of chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4729) apply to mortgage liens upon real estate after foreclosure? Said section, so far as it is necessary to consider it in this case, reads:

'' No judgment heretofore rendered or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration

of one year next after its rendition, shall operate as a lien on the real estate of any debtor to the prejudice of any other judgment creditor.''

This is a new question in Kansas practice, so far as we are able to learn, and no authority directly in point is cited by either party.

The contention of the plaintiff in error is that the code makes no distinction as to the nature or kind of judgment the lien of which shall so expire, and that a judgment in an action upon a note secured by mortgage is the same kind of a judgment, so far as the section of the statute referred to is concerned, as one upon any other obligation for the payment of money.

To sustain his contention, we are referred by the plaintiff in error to several sections of the statute and to the following decisions of our supreme court : *Smith v. Burnes*, 8 Kan. 198 ; *Lisle v. Cheney*, 36 id. 578, 13 Pac. 816 ; *Gillespie v. Lovell*, 7 id. 423 ; *Lamme v. Schilling*, 25 id. 92 ; *Scroggs v. Tutt*, 23 id. 190 ; *Kothman v. Skaggs*, 29 id. 5 ; *Thompson v. Hubbard*, 3 Kan. App. 714, 44 Pac. 1095 ; *Smith v. Kimball*, 36 Kan. 474, 13 Pac. 801 ; and *Lakin v. McCormick & Bro.*, 81 Iowa 545, 46 N. W. 1061.

We have examined with considerable care all of the authorities cited, and such others as we have been able to find bearing upon the question, and are unable to sustain his contention.

The only part of the decision in *Smith v. Burnes*, supra, that appears to have any bearing on this case is as follows :

''There was no formal levy of the order of sale on said lot. This, we think, was not necessary. The court had complete jurisdiction of the property without any formal levy. The court ordered that it be sold ; and the sheriff had no power to seize or sell any more or any less than the specific lot which he was

ordered to sell. The order of sale was not a general execution which the sheriff could levy on any property.''

In *Lisle v. Cheney*, supra, the main question was: ''Is the personal judgment rendered against the mortgagor, in an action to foreclose a mortgage, a lien on the other real estate of the debtor within the county?'' And the court held that it was, and that a stay of execution did not suspend the lien so that a third person could purchase the land during the stay free from the lien. That is all that the supreme court necessarily passed upon in that case. Some extracts from the opinion of the commissioner who reported the case to the supreme court are cited by the plaintiff in error to sustain his contention, but even giving them the authority of a decision of the court we do not think they sustain his position. The following extracts may be selected as the strongest:

'' So that we are unable to see from a consideration of these two sections combined that legislation has made any exception in case of mortgage liens; they are placed on the same footing as liens in other actions for the recovery of judgments for money.''

''So that a mortgage lien, in an action to foreclose it, and in the enforcement of it after it has passed into judgment, is subject to all the other provisions of the statute and the principles of the law, on all questions respecting it.''

''Actions to enforce charges or liens on specific property that were formerly equitable in their nature are now converted into legal actions.''

'' From these cases it must be held that in this state all civil actions to enforce liens on specific property are to be regarded in classification as legal actions for the recovery of money.''

''The lien thus created and declared by statute exists until the judgment becomes dormant, or is barred by the statutes of limitation. It is true that under

Jackson v. King.

§ 468 it may become subordinate to the lien of some other jugdment creditor, by failure to have execution issued and levied within a year after its rendition.''

''If it is a first one [lien], its seniority must be preserved by levy within the year.''

When these extracts are read in connection with the question that was before the court, as to the effect of the money judgment upon property not mortgaged, they lend but little if any support to the claim of the plaintiff in error.

The question in that case was solely as to the effect of the so-called deficiency judgment. There was a mortgage lien upon the property mortgaged. This was created by the act of the parties themselves and required no judgment of the court to establish, and no question of its validity was suggested, but after the mortgaged property had been appropriated toward the payment of the debt a balance remained for which the plaintiff had a personal judgment, the effect of which was then being discussed, and it was held to be a lien on all of the real estate of the debtor within the county. As regards this lien, ''it is true that under § 468 it may become subordinate to the lien of some other judgment creditor, by failure to have execution issued and levied within a year after its rendition.'' And, ''if it is a first lien, its seniority must be preserved by levy within the year.''

None of the authorities cited is sufficient to cause us seriously to doubt the correctness of the conclusion arrived at by us that the lien of a mortgage upon the mortgaged property is not lost upon a foreclosure being had and no order of sale issued within a year thereafter ; and that the language, ''no judgment  .  .  . shall operate as a lien,'' has reference only to liens created by the operation of law and not to liens cre-

ated by the contract of the parties. In the one case the court must get possession of the property by a levy of execution ; in the other, it " already had complete jurisdiction of the property without any formal levy."

The judgment of the district court is affirmed.