# JULY TERM, 1902.

## PRESENT:

Hon. FRANK DOSTER, Chief Justice.
Hon. WILLIAM A. JOHNSTON,
Hon. WILLIAM R. SMITH,
Hon. EDWIN W. CUNNINGHAM,  } Justices.
Hon. ADRIAN L. GREENE,
Hon. ABRAM H. ELLIS, *
Hon. JOHN C. POLLOCK,

THE ATCHISON SAVINGS BANK v. W. F. WYMAN *et al.*

No. 12,315.   (69 Pac. 326.)

### SYLLABUS BY THE COURT.

1. MORTGAGE LIENS—*Priorities—Recital in Second Mortgage.*
The recital in a mortgage that it is subsequent and subject to a prior mortgage does not estop the mortgagee therein or his assigns, as between the two mortgagees, after a judgment setting aside and canceling such pretended first mortgage has been rendered at the instance of the mortgagor, from asserting the priority of his mortgage lien over that of the lien of the first mortgagee, which had been set aside and canceled.

2. JUDGMENT LIENS—*Payment of Taxes—Priority.* In an equitable action to adjust and determine the priority of judgments and other liens upon real estate, where it appears that, after the rendition of the judgments and the foreclosure of the mortgages, one of the mortgagees, to preserve the property from being deeded for unpaid taxes, pays the taxes, as between the lien-holders he is entitled to a first lien on the real estate for the taxes thus paid.

3. ——— *Issuance of Execution—Levy.* Where two judgment creditors have failed for more than one year after the rendition of their judgments to cause executions to be issued and levied on the land of the judgment debtor, the one who thereafter first issues and levies his execution has priority over the other who subsequently does so.

* Mr. Justice ELLIS died September 25, 1902. The Honorable ROUSSEAU A. BURCH was appointed to the vacancy September 29, 1902, by Governor W. E. Stanley.

Error from Atchison district court; Z. T. Hazen, judge *pro tem*.  Opinion filed July 5, 1902.  Affirmed.

*Jackson & Jackson*, for plaintiff in error.

*W. W. & W. F. Guthrie*, and *Waggener, Horton & Orr*, for defendants in error.

The opinion of the court was delivered by

Greene, J. : This action was begun by plaintiff in error to settle the priority of liens on a quarter-section of land in Atchison county.  The court made numerous findings of fact and conclusions of law, and adjudged the plaintiff in error to hold the eighth and last lien on the real estate in controversy, from which judgment it prosecutes error to this court.  Only the pleadings, findings of fact and conclusions of law are before us.

On December 13, 1878, C. G. Means, who was at that time a married man occupying the real estate in controversy as a homestead, executed to the plaintiff in error notes to the amount of $10,000, and secured the same by a mortgage on the land.  In the execution of the notes and mortgage, Malissa J. Means, the wife of C. G. Means, did not join.  Her name was forged by her husband, but of this fact the bank had no knowledge.  August 18, 1894, Means and wife executed their note and a mortgage on the same real estate to W. F. Wyman.  In August, 1895, Wyman commenced his action to recover a personal judgment against Means and wife and to foreclose his mortgage, making plaintiff in error and other parties hereto defendants.

Upon April 26, 1896, judgment was rendered in said cause in favor of plaintiff in error against Means and wife on said notes in the sum of $12,692.29, and

its mortgage decreed to be a first lien and foreclosed. Judgment was also rendered in favor of Wyman against Means and wife, and his mortgage decreed to be a second lien and foreclosed. As to the other defendants, judgment was rendered in favor of each and liens decreed in their order. In May, 1896, and after the rendition of the above judgments, Mrs. Means filed her application asking the court to open the judgments and decrees theretofore rendered against her as to the bank and permit her to defend. In the application, she alleged that the notes and mortgage upon which the bank recovered its judgment and decree of April 26, 1896, as to her, were forgeries, and that she had not appeared or authorized any one to appear for her in the action in which such judgment and decree were entered. In this proceeding she served notice on all the parties to the action. Her application was granted.

At the January, 1898, term of court, the cause was tried on the issues thus joined. The journal entry of that proceeding shows that all the parties to the original action appeared ; and judgment was rendered setting aside the judgment and decree of April 26, 1896, in favor of the bank and against Mrs. Means, and canceling the notes and mortgage as to Mrs. Means. That judgment became final and was conclusive on the parties in this action.

This court has frequently held that a mortgage on a homestead which is void as to the wife is void as to the husband. After the execution of the notes and mortgages to the bank and Wyman, and before the rendition of the judgments and decrees of foreclosure of April 26, 1896, Means and family abandoned the land in controversy as a homestead. It was, therefore, and had been some time prior to April 26, 1896,

subject to the liens of any judgments obtained against C. G. Means, in whose name the land stood. The claims of all the parties to this litigation, except the bank and Wyman, were judgments obtained in the foreclosure of liens, or were judgments obtained before justices of the peace, abstracts of which were filed in the office of the clerk of the district court prior to the first day of the term of court at which the judgments of the bank and Wyman were rendered, with the exception of that in favor of Wade. This judgment was based on a prior attachment.

The present action was commenced after the court below had set aside the judgment and decree as to Mrs. Means, to determine the status of the bank's lien. After the rendition of the judgment setting aside the bank's judgment and decree as to Mrs. Means, the bank stood in a position with reference to this land the same as if its mortgage had never existed. It had a judgment against C. G. Means, and, the homestead having been abandoned prior to the rendition thereof, its judgment was a lien on the real estate in controversy subject to all mortgage, mechanic's, judgment and attachment liens antedating the first day of the term of court at which it was rendered.

It is contended, however, notwithstanding the bank's judgment as to Mrs. Means had been set aside and its mortgage canceled, that, because the mortgage to Wyman was subsequent in time and on its face made subject to the mortgage of the bank, the latter's mortgage lien is still prior to that of Wyman. This contention cannot be sustained. The recitals in Wyman's mortgage do not estop him from asserting the priority of his lien, after the court had set aside the pretended mortgage lien of the bank. Where a

party takes title subject to a recorded mortgage and agrees to pay it, he cannot thereafter be heard to question it, because he purchased subject to such lien and received a credit on the purchase-price in consideration of its discharge. The authorities cited by counsel for plaintiff in error support this proposition, but do not go to the facts of this case.

It is also argued that, because the judgment of June 6, 1896, fixed the liens of the respective parties to this litigation, and because the latter judgment, which set aside the plaintiff's judgment and foreclosure decree and canceled its mortgage as to Mrs. Means, did not disturb its lien status as decreed in the former judgment as to the other parties, therefore, as to them, it still retains its position as holding the first lien. In the decree of June 6, 1896, it was the mortgage lien of plaintiff that was decreed to be first, not its judgment lien. It was given priority because it appeared to hold the first mortgage. When later, in the same action, with all the parties before it, the court set aside this decree, as well as the mortgage upon which it stood, we are unable to comprehend what was left as the foundation for this claimed continued priority of lien.

It is contended that, as Wyman failed to issue a special execution on his foreclosure decree within one year after the rendition of his judgment, under section 4914, General Statutes of 1901, he lost priority as a judgment creditor. This provision of the code has reference only to judgment-lien holders, and was not intended to apply to mortgage liens. (*Jackson v. King*, 9 Kan. App. 160, 58 Pac. 1013; affirmed in *Jackson v. King*, 62 Kan. 850, 62 Pac. 655.) When Wyman commenced his foreclosure action he caused an attachment to issue, which was levied on personal

property appraised at $1920. This attachment was not set aside, nor was the property sold. It is now contended by plaintiff in error that, as between the bank and Wyman, the latter should be charged with the full amount of the appraised value of this attached property, and that plaintiff should be given the benefit of it in adjusting its liens. If it be true that Wyman should be compelled to credit his mortgage lien with the amount of the appraised value of this property, why, we ask, should the bank appropriate this amount as against other and prior judgment-lien holders? It is only a judgment-lien holder, and is subsequent to other judgment-lien holders. It is, therefore, in no position to demand the full benefit of such a holding. Wyman, however, is not chargeable with the value of the attached property, unless it be shown that he realized something out of it, or that his acts with reference thereto wrongfully deprived the other judgment creditors from realizing on this property. Nothing appears in the record to sustain either theory.

The land in controversy was sold for taxes, and, after judgment in the foreclosure proceedings and a few days before the tax deed was due, Wyman paid the taxes. In this action the court adjudged the amount of taxes thus paid a first lien on the land, and it is claimed that this was error. This was an equitable action to adjust the priority of liens on the real estate. The tax was a lien and the payment thereof necessary to preserve the property for the lien-holders. It would have been highly inequitable as between the lien-holders to refuse to allow the taxes thus paid to stand as a lien on the real estate in which all were equally interested, and the payment of which was beneficial alike to all.

It appears that on August 13, 1895, the Exchange National Bank sued Means and others in the district court of Atchison county, and caused the land in question to be attached. On April 1, 1896, the plaintiff therein recovered judgment and a decree to sell the attached property. After the recovery of its judgment the bank assigned it to J. L. Wade, one of the defendants in error in this action. On March 9, 1898, Wade caused a special execution to issue on said judgment and levied on the land in question on April 18, 1898. This execution was returned for want of time to sell thereunder. No other execution was issued by either the Exchange bank or Wade. On April 11, 1898, the plaintiff in error caused a special execution to issue, which was levied on this land and returned by order of the court. This was the only execution issued by the plaintiff in error on its judgment under which it levied on or sought to sell this land.

It is claimed by the plaintiff in error that the court erred in adjudging Wade's lien to be prior to its lien on said real estate. Its contention is that, as Wade did not cause execution to issue on his judgment within one year from the rendition thereof, its judgment took precedence over the judgment lien of Wade.

Section 4914, General Statutes of 1901, provides :

"No judgment heretofore rendered, or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of any debtor to the prejudice of any other judgment creditor."

It will be observed that in order to retain the priority of a judgment lien, the statute requires not only that the execution shall be issued on the judgment, but that it shall be levied on the real estate. At the time the savings bank issued and levied its execution

on this real estate, the land was resting under a valid levy made prior thereto by Wade.  Neither of these parties having issued and levied execution within one year after the rendition of their respective judgments, they lost their liens as to other more diligent judgment creditors, but as Wade had caused an execution to be issued and levied on the land prior to the levy made by the bank, it must be held that his judgment lien, under which his execution was levied, was prior in point of time to the levy made by the bank, and was therefore a subsisting lien when the bank levied its execution.  It is true that the plaintiff in error, before its decree was set aside, had issued a special execution to sell under the decree, but this was not the issuance and levy of an execution, and as the decree under which its order of sale was issued was afterward set aside, certainly such proceeding was not a compliance with the statute.

There are some other alleged errors, an examination of which convinces us that they have no merit, and are too inconsequential for further reference.  We are of the opinion that there is no error in the record.

The judgment of the court below is affirmed.

JOHNSTON, CUNNINGHAM, ELLIS, JJ., concurring.